**STATE of Tennessee, Appellee,**

v.

**James BUSH and Reva Bush, Appellants.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Sept. 14, 1981.

Permission to Appeal Denied by Supreme Court Dec. 28, 1981.

Ben W. Hooper, II, Newport, for appellants.

William M. Leech, Jr., Atty. Gen., Nashville, Al Schmutzer, Jr., Dist. Atty. Gen., Sevierville, Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

TATUM, Judge.

The defendants, James Bush and Reva Bush, were convicted of felonious possession of unstamped alcohol, possession of stamped alcoholic beverages for resale and possession of alcoholic beverages for resale without a proper permit or license. Pending this appeal, James Bush died. Therefore, the cases are abated as to him. The judgments are affirmed as to Reva Bush.

Much of the evidence which was the basis of Reva Bush's conviction was a quantity of alcoholic beverages seized by officers pursuant to a search warrant. The search warrant was issued by James Shults, an individual who was purportedly appointed a Judicial Commissioner by the Quarterly County Court of Sevier County, pursuant to T.C.A. § 40–120. The defendant insists that this code section is unconstitutional in that it creates an "inferior court" under Article VI, Section 1, Constitution of Tennessee, and therefore the statute violates Article VI, Section 4 of the State Constitution, because it does not require election of Judicial Commissioners, an age limit of at least 30 years, and a term of office of 8 years.

The State insists that the Legislature created a "corporation court" as authorized by Article VI, Section 1, Tennessee Constitution, and that therefore Article VI, Section 4, Tennessee Constitution, is not applicable to the Judicial Commissioners.

The legislation under consideration, T.C.A. § 40–120(a)(1), (2), provides as follows:

"40–120. Appointment of judicial commissioners—Duties—Terms—Compensation.—(a)(1) The chief legislative body of any county having a population of less than two hundred thousand (200,000) according to the 1970 federal census or any subsequent federal census may appoint one or more judicial commissioners whose duty or duties shall include but not be limited to the following: issuance of arrest and search warrants upon a finding of probable cause in accordance with the procedures outlined in chapters 5 and 6 of title 40 and issuance of mittimus following compliance with the procedures prescribed by § 40–604. The term or terms of said officers shall be established by the chief legislative body of the counties but shall not exceed a four-year term. No member of the county legislative body shall be eligible for appointment as a judicial commissioner.

(2) The judicial commissioner or commissioners shall be compensated from the general fund of the county in an amount to be determined by the chief legislative body. Fees established and authorized by § 8–21–401 shall be paid to the county general fund upon the services detailed therein being performed by a judicial commissioner. In a county having a county commission, the chief legislative body shall be the county court.

We disagree with both the State and defendant. We do not think that the above statute created either an "inferior" court or a "corporation" court.

The meaning of the term "court" is discussed by the Supreme Court in *Mengel Box Company v. Fowlkes*, 135 Tenn. 202, 206, 186 S.W. 91 (1916):

"A court is an instrumentality of sovereignty, the repository of its judicial power, with authority to adjudge as to the rights of person or property between adversaries. The presence of a judge or judges is necessary as an essential element of a court. A 'court' was defined by Bacon to be 'an incorporeal being, which requires for its existence the presence of the judges or a competent number of them.'

The term as defined by Mr. Bouvier in his Law Dictionary (quoted by this court in *Railroad v. Crider*, 91 Tenn. 489, 505, 19 S.W. 618, 622), is this:

'The presence of a sufficient number of the members of a body in the government, to which the public administration of justice is delegated, regularly convened in an authorized place, at an appointed time, engaged in the full and regular performance of its duties.' "

The act in question does not provide that the Judicial Commissioner convene a court at any particular place or time. His jurisdiction is limited to the issuance of warrants for arrest and search and to the issuance of mittimus. He is not given duties which would lend themselves to "full and regular performance" at an appointed time or place.

The duties fixed by the legislation for Judicial Commissioners are characteristic of those of a "magistrate," and not of a "court." Judicial Commissioners are expressly designated as "magistrates" in T.C.A. §§ 38–301, 40–114 and 40–603, indicating that the legislature intended Judicial Commissioners to be magistrates. Magistrates are authorized to issue arrest warrants by T.C.A. §§ 40–602 and 40–701. A magistrate is authorized to issue search warrants by T.C.A. § 40–501.

The power of the legislature to designate "magistrates" is not challenged. The legislature has unlimited power of legislation, except so far as it is restrained expressly or by necessary implication, by the Constitution of either the United States or of this State. See *Motlow v. State*, 125 Tenn. 547, 145 S.W. 177 (1911); *Wright v. Cunningham*, 115 Tenn. 445, 91 S.W. 293 (1905); *Railroad v. Wells*, 104 Tenn., 706, 710, 59 S.W. 1041 (1900).

Citing *Marsh v. State*, 203 S.W.2d 372, 373 (1947), the defendant correctly points out that the issuance of a search warrant is a judicial function. She erroneously reasons that a judicial function can constitutionally be performed only by a judge of a court created by the legislature pursuant to Article I, Section 1, of the Tennessee Constitution. We espouse the reasoning of the Supreme Court of the United States in *Shadwick v. City of Tampa*, 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972), in which the court was faced with a constitutional attack upon a statute authorizing a court clerk to issue an arrest warrant. The court held that the Fourth Amendment did not require the issuing magistrate or "judicial officer" to be a lawyer or a judge, but he must meet only two tests:

"He must be neutral and detached, and he must be capable of determining whether probable cause exists...."

The court further held:

"Appellant likewise has failed to demonstrate that these clerks lack capacity to determine probable cause. ...our legal system has long entrusted non-lawyers to evaluate more complex and significant factual data than that in the case at hand. Grand juries daily determine probable cause prior to rendering indictments, and trial juries assess whether guilt is proved beyond a reasonable doubt. The significance and responsibility of these lay judgments betray any belief that the Tampa clerks could not determine probable cause for arrest."

\*　　\*　　\*　　\*　　\*　　\*

"What we do reject today is any *per se* invalidation of a state or local warrant system on the ground that the issuing magistrate is not a lawyer or judge. Communities may have sound reasons for delegating the responsibility of issuing warrants to competent personnel other than judges or lawyers. .... All this is not to imply that a judge or lawyer would

not normally provide the most desirable review of warrant requests. But our federal system warns of converting desirable practice into constitutional commandment. It recognizes in plural and diverse state activities one key to national innovation and vitality. States are entitled to some flexibility and leeway in their designation of magistrates, so long as all are neutral and detached and capable of the probable-cause determination required of them." *Id.* at 351–354, 92 S.Ct. at 2123–2124.

■ We hold that T.C.A. § 40–120 does not create an "inferior court" or a "corporation court" as referred to in Article VI of The Tennessee Constitution. This legislation created a "magistrate," to which office the requirements of Article VI, § 4 of the Tennessee Constitution are not applicable. We further hold that T.C.A. § 40–120(a)(1), (2) is not repugnant to either the constitution of the United States or of this State and that the General Assembly acted within its constitutional power in adopting this legislation.

We now consider whether the actions of the Quarterly County Court are sufficient in law to vest the office of Judicial Commissioner in James Shults. The minute entries are as follows:

"Whereas: Due to recent changes in laws and Tennessee codes, a real hardship has arisen in obtaining warrants at night.

Whereas: State statutes provides (sic) that Quarterly County Court can relieve this situation by hiring Judicial Commissioners.

Now Therefore Be It Resolved that the Quarterly Court of Sevier County, Tennessee appoint two (2) Judicial Commissioners at salaries not to exceed $125.00 per month for each commissioner.

Passed By Court

This July 17, 1978.

Motion by Montgomery and duly seconded by Burchfiel to adopt the above resolution. Motion carried and the (sic) in-

structed to place the same upon the minutes of this Court."

\*　　\*　　\*　　\*　　\*　　\*

"James Shults was recommended by Dodgen and duly seconded by Reagan to fill the position of issuing warrants in Gatlinburg.

Motion carried and the clerk instructed to place the same upon the minutes of this Court."

■ The above two actions, that of the adoption of the resolution and that of the election of James Shults, were taken consecutively on the same day and both relate to the same subject matter. Therefore, they must be construed in *pari materia* in considering whether the language of the second minute entry was sufficient to designate James Shults as a Judicial Commissioner. *Dixie Rents, Inc. v. City of Memphis*, 594 S.W.2d 397 (Tenn.App.1979); *Bethany v. State*, 565 S.W.2d 900 (Tenn.Cr.App.1978). We must also observe that actions of Quarterly County Courts and other bodies that are administered by men unlearned in the technical requirements of the law should not be strictly construed. The minutes of such bodies will be looked upon with indulgence, and though unskillfully drawn, will be legally sufficient if their meaning can be ascertained by a fair and reasonable interpretation. *Hall v. Franklin County*, 184 Miss. 77, 185 So. 591 (1939); *State v. Orr*, 152 La. 1031, 95 So. 211 (1922).

■ Other rules of statutory construction are applicable here. The premier and dominant rule in construing these entries is to ascertain and give effect to the intent of the Quarterly County Court. *Tidwell v. Collins*, 522 S.W.2d 674 (Tenn.1975). The intent of the County Court will prevail over the literal meaning of the words or terms found in the minute entry. *Southern v. Beeler*, 183 Tenn. 272, 195 S.W.2d 857 (1946). When the court can gather paramount intention of legislative action, such intention will be given effect, although there exist some apparent obstacles. *Bell v. Town of Pulaski*, 182 Tenn. 136, 184 S.W.2d 384 (1945).

■ In reading the above minute entries of the Sevier County Court, in the light of the above-mentioned rules of construction, we have no difficulty in ascertaining that it was the intent of that body to designate James Shults as a Judicial Commissioner, although this intent was inartfully expressed. The language employed in the two minute entries indicates that it was the County Court's intent to authorize James Shults as a Judicial Commissioner to "fill the position of issuing warrants."

■ In applying these rules, we also hold that the language employed in the minute entry does not restrict James Shults to the issuance of warrants in Gatlinburg. In reaching this conclusion, we have considered the foregoing rules and also the background and circumstances under which T.C.A. § 40–120 was enacted and the basis upon which the above minute entires were adopted. Since the time when Tennessee was a part of North Carolina, several justices of the peace have been utilized in each county to issue warrants and mittimus. There was a sufficient number of justices to enable an officer to reach one at any given time. Justices were in effect deprived of this jurisdiction by this court in the case of *John Lee Birdsong v. State of Tennessee,* Sumner County # 5035, filed February 22, 1978, at Nashville (unreported). This court, following the mandate of the United States Supreme Court in *Connaly v. Georgia,* 429 U.S. 254, 97 S.Ct. 546, 50 L.Ed.2d 444 (1977), held that since a justice was paid $3.00 when he issued a search warrant, but was uncompensated when he declined to honor an application for a warrant, justices could no longer constitutionally issue search warrants. In many counties this left only one or two officials with authority to issue warrants; hence, law enforcement was seriously hampered. It was the purpose of T.C.A. § 40–120 to alleviate this situation.

The above-quoted resolution of the Quarterly County Court sought to avail itself of the benefit of T.C.A. § 40–120 for Sevier County. The resolution states that "due to recent changes in laws in Tennessee Codes, a real hardship has arisen in obtaining warrants at night," and provides for the appointment of Judicial Commissioners in the county. The stating that Mr. Shults was "to fill the position of issuing warrants *in Gatlinburg*" was an expression of the County Court's intention to fill one position in the area of Gatlinburg as an accessible or convenient area for one of the commissioners to be located. We do not think that it was the intent of the court to restrict the territory in which Mr. Shults could issue warrants. Knowing the purpose for appointing the two commissioners, we hold that a legitimate public interest would be served in selecting the areas in which each might be found. We do not agree that the County Court intended to make Judicial Commissioners available to issue warrants only for the City of Gatlinburg; it desired to remedy a problem existing over the entire county. We must construe these actions of the County Court so as to carry out the purpose for which they were taken. *State v. Netto,* 486 S.W.2d 725 (1972); *White v. Kane,* 178 Tenn. 469, 159 S.W.2d 92 (1942); *Polk County v. State Board of Equalization,* 484 S.W.2d 49 (Tenn.App. 1972).

■ The defendant argues that the following description contained in the search warrant did not adequately describe the property to be searched:

"(S)tarting at the Jefferson County and Sevier County line on State Highway 411, go West on said Highway toward Sevierville 8/10 of a mile to a stone house located on the South or left hand side of the road. Said house has an asphalt shingle roof, trimmed in white with the name James Bush on the mailbox. Behind the house are a number of out buildings."

The above description meets the requirement of enabling an officer to locate the place to be searched with reasonable certainty. See *Hatchett v. State,* 208 Tenn. 399, 346 S.W.2d 258 (1961).

■ There is no merit to the defendant's contention that the affidavit is insufficient because it refers to the informant as a "confidential source who has furnished reli-

able information in the past." The defendant states that it was necessary to refer to the informant as a "reliable source." The affidavit was sufficient to enable the issuing magistrate to make a neutral and detached finding of probable cause, and the affidavit was based on information of a reliable informant. See *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Woods v. State*, 552 S.W.2d 782 (Tenn.Cr.App.1977).

The defendant contends that the search warrant was issued on the basis of "stale information," because it was issued 6 days after the informant observed the defendant in possession of illegal liquor. This issue is overruled on authority of *Hicks v. State*, 194 Tenn. 351, 250 S.W.2d 559 (1951).

There is no merit to the defendant's contention that the court abused its discretion in permitting a State witness whose name had not been listed on the indictment to testify. The name of the witness was furnished to defense counsel two days before trial. There is no showing or suggestion of prejudice to the defendant in permitting this witness to testify. This issue is overruled. See *McBee v. State*, 213 Tenn. 15, 372 S.W.2d 173 (1963); *Houston v. State*, 567 S.W.2d 485, 486 (Tenn.Cr.App. 1978); *Arrington v. State*, 548 S.W.2d 319 (Tenn.Cr.App.1976).

The defendant says that the State failed to prove that the offense occurred in Sevier County. Two officers testified that the premises searched were in Sevier County. One of these officers testified that he knew "roughly" where the county lines were situated, and the other testified that he knew the location of a "marker" indicating the county line and assumed that it was correct. The State introduced certified copies of two deeds indicating that the defendant and her husband owned land in Sevier County. There was no evidence that the crime occurred in another county. Venue need only be established by a preponderance of the evidence, and such evidence may be either direct or circumstantial. *State v. Bennett*, 549 S.W.2d 949 (Tenn.

1977); *Clariday v. State*, 552 S.W.2d 759 (Tenn.Cr.App.1976). The evidence is sufficient upon which the jury could be convinced by a greater weight of the evidence that the offense occurred in Sevier County. This issue is overruled.

We overrule the defendant's contention that the prosecution did not sufficiently establish that the alcoholic beverages which were possessed by them were capable of being consumed by a human being. See T.C.A. § 57–3–101(1). There was evidence that the defendant possessed "243 pints of taxpaid whiskey and 9 gallons of moonshine whiskey." The beverage was admitted into evidence and the jury was permitted to examine it. On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn.1978). The evidence on this question meets the standards of Rule 13(e), T.R.A.P.

The defendant next insists that there is no evidence to establish that they received the alcoholic beverages since March 1, 1917, as required by T.C.A. § 39–2507. The evidence establishes that the whiskey was seized on August 14, 1979. In *Davidson v. State*, 223 Tenn. 193, 443 S.W.2d 457 (1969), the Supreme Court held that liquor seized in 1967 fairly indicated that it was acquired since March 1, 1917. In *Hicks v. State*, 194 Tenn. 351, 250 S.W.2d 559 (1951), the Supreme Court held that illegal liquor seized in 1949 warranted the conclusion that it was received since March 1, 1917. Likewise, we hold that the liquor seized 62 years after March 1, 1917, warrants the conclusion that it was received since that time.

We have considered the remaining issues and find them to be without merit.

The cases are abated as to James Bush. The judgments are affirmed as to Reva Bush.

DUNCAN, J., concurs.

BYERS, J., concurs in result.