STATE of Tennessee, Appellant,

v.

Garland Lee SMITH and Donna Faye Smith, Appellees.

Court of Criminal Appeals of Tennessee, at Nashville.

April 15, 1993.

N. Reese Bagwell, Clarksville, for appellees.

Charles W. Burson, Atty. Gen. and Reporter, Kimbra R. Spann, Asst. Atty. Gen., Nashville, James W. Kirby, Asst. Dist. Atty. Gen., Ashland City, for State of Tenn.

## OPINION

WADE, Judge.

The defendants, Garland Lee Smith and Donna Faye Smith, were indicted for possessing pit bull dogs for the purpose of fighting for amusement, sport or game; manufacturing marijuana; and possession of marijuana with intent to sell. Upon motion by the defendants, the trial court suppressed evidence acquired pursuant to the execution of a search warrant of the defendants' residence.

The issue presented by the state for review is whether the evidence was properly suppressed because of a deficient supporting affidavit. The defendants argue that the search warrant was invalid for other reasons as well:

(1) a special general sessions judge had no authority to issue a search warrant;

(2) the search warrant failed to allege an offense; and

(3) the signature of the affiant to the search warrant was different from that shown in the typed portion of the affidavit.

We hold that the affidavit was insufficient; therefore, the judgment is affirmed.

On August 9, 1990, Phillip A. Maxey, sitting specially as General Sessions Judge for Cheatham County, issued a search warrant for the residence of the defendant, Garland Smith. In a space provided in the first paragraph of the search warrant form, the name

"Mike Phillips" was typed as the affiant. Sheriff Dorris Weakley, however, signed the warrant; his signature was subscribed to by the issuing judge. The warrant includes a description of the residence and an adjoining mobile home and provides directions. Otherwise, the affidavit, a significant portion of which appears to be form, provides as follows:

> Affiant further states that there is probable cause and reasonable cause to believe that the aforementioned personal property constitutes property or things on the afore-described premises, and in the possession of a person or persons with the intent to use it as a means of committing a public offense, _____.
>
> Affiant further states that an informant, whose name he has this date revealed to the official before whom this application is made, has told the affiant that within the last ten (10) days such informant has been in the premises above described and has personally seen *marijuana plants* growing on the above described property.
>
> Affiant further states that such informant is a reliable person who is Tom Shepherd.

After the words "marijuana plants," the portion of the form providing "in violation of the law" has been typed over with x's.

The sheriff executed the search warrant and found, among other things, 29 pit bulls, a treadmill with a harness, and a plywood arena erected in the basement. His return on the warrant indicates that he seized 97 marijuana plants ranging from four to ten feet, sets of scales, several bags of marijuana, a quart jar and several small bottles of marijuana seeds, and a large number of guns. Tom Shepherd was identified as the "informant" who supplied the information upon which the warrant was issued. During argument on the motion to suppress, it was established that Shepherd was a police officer; the warrant, however, did not contain that information.

The trial court ruled that Special Judge Maxey, the City Judge of Ashland City, was authorized to issue the search warrant; that the affidavit was insufficient as to the veracity prong of the *Aguilar–Spinelli* test by only identifying the informant as "a reliable person who is Tom Shepherd"; and that the marijuana plants were beyond the curtilage of the residence, outside of the authorized area of search, and not admissible as evidence under the open fields doctrine. All evidence seized was, therefore, suppressed. The trial court found that the search warrant, by stating "marijuana plants growing on the ... property," did state an offense and that the variance in the identification of the affiant with the signatory was not fatal. All property seized and not qualifying as contraband was ordered to be returned to the defendants.

## I

The state's primary concern is that the trial court improperly applied the guideline established in *State v. Jacumin,* 778 S.W.2d 430 (Tenn.1989), by requiring the affidavit to adequately address the veracity of the informant. It asserts that a distinction exists between the standard of reliability required of the "confidential informant," such as the one in *Jacumin,* and the "citizen informant" described in *State v. Melson,* 638 S.W.2d 342 (Tenn.1982).

An affidavit is an indispensable prerequisite to the issuance of a search warrant. Tenn.Code Ann. § 40–6–103; *State ex rel. Blackburn v. Fox,* 200 Tenn. 227, 292 S.W.2d 21, 23 (1956). Its content must establish probable cause. Tenn.Code Ann. § 40–6–104; Tenn.R.Crim.P. 41(c). Generally, probable cause is defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act. *See Lea v. State,* 181 Tenn. 378, 181 S.W.2d 351 (1944).

In *Jacumin,* our Supreme Court adopted the two-pronged test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), to determine the adequacy of the affidavit upon which the search warrant was issued:

(1) is there set out a basis for the informant's knowledge; and

(2) is there a factual allegation showing that the source is credible or his information reliable.

In *Aguilar,* the United States Supreme Court held that there must be a "basis of knowledge" when the officer making the affidavit relies upon a confidential informant; the opinion also addressed the veracity prong:

> [T]he magistrate must be informed of some of *the underlying circumstances* from which the informant concluded that the narcotics were where he claimed they were, *and* some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, ... *was "credible" or his information "reliable."*

378 U.S. at 114, 84 S.Ct. at 1514 (emphasis added).

The search warrant in *Aguilar* was improvidently issued because nothing in the affidavit established that the officer had any personal knowledge of the matter attested to or that his confidential source spoke from personal knowledge rather than mere suspicion. *Aguilar,* 378 U.S. at 113, 84 S.Ct. at 1513. In *Spinelli,* the court found that the affidavit was inadequate by its failure to contain any reason why the informant had been deemed reliable. Moreover, there was insufficient information about the underlying circumstances from which the informant concluded that Spinelli was involved in a bookmaking operation. 393 U.S. at 416, 89 S.Ct. at 589.

In adopting the *Aguilar-Spinelli* test, our Supreme Court held in *Jacumin* as follows:

> We agree ... that the principles developed under *Aguilar v. Texas,* ... and *Spinelli v. United States,* ... *if not applied hypertechnically,* provide a more appropriate structure for probable cause inquiries incident to the issuance of a search warrant than does [*Illinois v.*] *Gates* [462 U.S. 213, 103 S.Ct. 2317 [76 L.Ed.2d 527] (1983)]. We are also of the opinion that the *Aguilar-Spinelli* standard ... is more in keeping with the specific requirement of Article 1, Section 7 of the Tennessee Constitution that a search warrant not issue "without evidence of the fact committed."

778 S.W.2d at 436 (emphasis added). By the use of this two-prong standard, the warrant in this case would clearly fail.

In *State v. Melson,* 638 S.W.2d 342 (Tenn. 1982), a warrant to search a truck was issued based upon the affidavit of an officer with the Madison County Sheriff's Department. The affidavit listed several sources of information including the victim's son and daughter-in-law, a co-worker of the defendant, and a medical examiner. The officer included his personal observations and other information supplied by an unnamed "reliable source." The court responded as follows to a challenge based upon the *Aguilar-Spinelli* standard:

> A clear distinction has developed between the type of informant whose information was used therein, and the type of informant referred to in [the officer's] affidavit. What we have in the present case is the so called "citizen-informant," or "informant not from the criminal milieu." The reliability of such informants and the information which they provide are judged by a different standard than that of the typical criminal informant or "tipster."

*Id.* at 354.

The court quoted with approval portions of *United States v. Rollins,* 522 F.2d 160 (2nd Cir.1975):

> In this case, Williams was not an anonymous paid informer but an identified bystander with no apparent motive to falsify. The report of such a person has a "peculiar likelihood of accuracy...." Specific allegations of reliability or past reliable contact are not required when the informant in question was an eye witness to the crime....
>
> \*   \*   \*   \*   \*   \*
>
> The principle to be applied is that the magistrate must have a " 'substantial basis' for crediting the hearsay." In this case, Williams' information was based upon his personal observation and furnished adequate detail to meet this criterion. Moreover, the information provided by Williams was amply corroborated....

522 F.2d at 164–165 (citations omitted).

■ Other cases cited in *Melson* indicate that search warrants involving citizen informants are adequate when the information supplied by the affidavit intrinsically accred-

its the informant. In such an instance, there is a presumption of reliability. The affiant has no obligation to establish that his source is credible or the information reliable. The name of the source need not be disclosed in the affidavit:

> The reliability of the source and the information must be judged from all of the circumstances and from the entirety of the affidavit. The name of the source is only one factor to be considered.

*Melson*, 638 S.W.2d at 356.

The circumstances in *Melson* were similar to those in *United States v. Melvin*, 596 F.2d 492 (1st Cir.1979). In *Melvin*, an unidentified bystander witness supplied a link in the chain of circumstances supplied in the affidavit. It was held that *Aguilar–Spinelli* did not apply. That the information supplied by the "link" was not accusatory became a significant factor in the court's decision to uphold the warrant.

In *Melson*, our Supreme Court applied a "common sense and practical" reading of the warrant, relied on the fact that the affidavit contained information from more than one source, reasoned that the statement of the "reliable source" was "self-verifying" in that it was not speculative, and otherwise concluded as follows:

> Each case must be looked at under its own facts, and the existence of probable cause must be reviewed under all the circumstances. The combination of circumstances present as outlined in [the officers'] affidavit supports the magistrate's finding of probable cause.

638 S.W.2d at 357.

We agree with the state's argument that there has been a traditional difference in the way courts deal with search warrants issued upon information supplied by a confidential informant and those based upon statements of a "citizen informant"—a victim or a bystander witness. *See Jaben v. United States*, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965). Depending upon the nature of the charge, the Supreme Court has indicated that veracity may be assumed when the warrant is issued based upon information supplied by a victim or a witness. *See Cham-*

*bers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The rationale for this position has been stated thusly:

> Information supplied to officers by the traditional police informer is not given in the spirit of a concerned citizen, but often is given in exchange for some concession, payment, or simply out of revenge against the subject. *The nature of these persons and the information which they supply convey a certain impression of unreliability, and it is proper to demand that some evidence of their credibility and reliability be shown....*
>
> *However, an ordinary citizen who reports a crime which has been committed in his presence, or that a crime is being or will be committed, stands on much different ground than a police informer.* He is a witness to criminal activity who acts with an intent to aid the police in law enforcement because of his concern for society or for his own safety. He does not expect any gain or concession in exchange for his information. An informer of this type usually would not have more than one opportunity to supply information to the police, thereby precluding proof of his reliability by pointing to previous accurate information which he has supplied....

*State v. Paszek*, 50 Wis.2d 619, 184 N.W.2d 836, 842–843 (1971) (emphasis added).

█ If a victim or witness provides the information, some courts have simply required a lesser degree of verification than that required of the confidential informant:

> [T]he reliability of such a person should be evaluated from the nature of his report, his opportunity to hear and see the matter as reported, and the extent to which it can be verified by independent police investigation.

*Id.* 184 N.W.2d at 843. To require any independent verification is, however, a minority view according to at least one authority:

> Most courts have concluded that "such corroboration is unnecessary" when the reports of one who appears to be an average citizen "are made upon his personal observation of the commission of a crime" (*quoting People v. Paris*, 489 [48] Cal.App.3rd 766, 122 Cal.Rptr. 272 (1975)). Rather,

while reliability "still must be shown, ... *it may appear by the very nature of the circumstances under which the incriminating information became known.*" Or, as some courts put it, when information comes from one who claims to have witnessed a crime or to have been the victim of a crime, the information "carries with it indicia of reliability" and is "presumed to be reliable."

1 W. LaFave, *Search and Seizure* § 3.4(a)(2d ed. 1987) (citations omitted) (emphasis added).

Crime victims or witnesses, under this view, are presumed reliable; yet law enforcement officers are cautioned to remain alert to other circumstances that might negate the presumption. In short, the veracity of the victim or witness may be assumed by the officer seeking the issuance of the warrant until the facts suggest otherwise. *See United States v. Rowell,* 903 F.2d 899 (2nd Cir. 1990). This appears to be consistent with the rule adopted in *Melson.*

We acknowledge the defendants' argument that *Jacumin* established a uniform standard for all cases involving the issuance of a search warrant, irrespective of who supplied the information. In our view, *Jacumin* did not overrule *Melson.* The *Aguilar–Spinelli* standard is one developed for determining the existence of probable cause under the fourth amendment only when the affidavit is based entirely upon allegations by an informant, usually a confidential one. *See State v. Moon,* 841 S.W.2d 336 (Tenn.Crim.App.1992). The very rationale for the two-pronged test is the inherent unreliability of such a person.

*Melson* is in accordance with the majority of the states. It implies that there is an indicia of reliability in the statement of any victim or witness (citizen informant) as opposed to the more traditional informant. Probable cause, including the reliability of the source, is adjudged "from the entirety of the affidavit." *Melson,* 638 S.W.2d at 356. That there is a different standard applicable does not, however, necessarily resolve the issue in favor of the state.

■ That Shepherd was identified by name in the warrant is a favorable factor.

Yet there is nothing in this affidavit that states Shepherd was a bystander witness, a victim, or otherwise a "citizen informant." He was not identified in the search warrant other than by name. And, while there was no confidentiality as to his identity at the time the sheriff sought the magistrate's permission to search, that does not foreclose the possibility that the informant was an undercover agent or that his status was otherwise confidential at the time of his visit to the defendants' property. Obviously, the magistrate had nothing on the face of the warrant to indicate that Shepherd was a police officer or that he had discovered the incriminating evidence through fortuitous circumstances.

The total information supplied was that Shepherd saw marijuana growing on the defendants' property sometime "within the last 10 days." Generally, that is the very kind of information typically supplied by a professional informant. In fact, Shepherd was initially identified in the warrant merely as "an informant."

■ It is incumbent, we think, upon whoever seeks a search warrant to include in the affidavit whether the informational source, named or confidential, qualifies as a citizen informant. Otherwise, the issuing magistrate would not know which standard, *Jacumin* or *Melson,* to apply. Whether the affidavit describes the status of the source directly, by implication, or by inference, is immaterial; it must, however, be apparent before the less stringent *Melson* standard can be used to test the validity of the warrant.

The affidavit is the "evidence upon which (the magistrate) must determine whether or not the warrant should be issued." *Hampton v. State,* 148 Tenn. 155, 252 S.W. 1007 (1923). This search warrant, inclusive of the four corners of the instrument, contains nothing to suggest that Shepherd was merely a witness, a bystander to the crime. By comparison, the search warrant in *Melson* identified the sources of the information and their relationship to the victim, and their status as witnesses of pertinent events. All were obviously "citizen informants" and entitled to presumptive reliability. Had Shepherd's status been more adequately set out in

this affidavit, the *Melson* test would have clearly applied. Because it was not, the affidavit is insufficient when tested by the *Jacumin* standard.

## II

At the time this warrant had been issued, Phillip Maxey, the City Judge of Ashland City, had been elected General Sessions Judge for Cheatham County but had not yet begun his regular term. His status was as special judge by the authority of Tenn.Code Ann. § 16–15–209(b):

> Where the judge finds it necessary to be absent from holding court, he may designate in a writing, to be filed with the clerk of the court, a name of a special judge to hold court in his place and stead; said person shall be a person who has the qualifications of such a judge and who shall take the same oath and have the same authority as a regular judge to hold court for the occasion. Should the judge fail to make such a designation, the other provisions of this section shall become operative.

■ In order to be valid, a search warrant must be issued by a magistrate. Tenn.Code Ann. § 40–6–101. A general sessions judge qualifies as a magistrate and is authorized to issue search warrants. Tenn.Code Ann. § 40–1–110.

The defendant argues that a "special general sessions judge" has no such authority under the applicable statute. Tenn.Code Ann. § 16–15–209. In the alternative, he argues that the written designation by General Sessions Judge Robert L. Perry, Jr., dated August 9, 1990, was ineffective, because it had not been filed with the county court clerk as required by Tenn.Code Ann. § 8–18–109:

> [J]udges of courts of general sessions, ... shall, unless it is otherwise provided, file such oaths and certificate in the office of the county clerk.

■ We disagree with the defendant on both counts. First, a "special" general sessions judge, properly qualified to hold the office, is no lesser a judge during the period of his designation than the regular, sitting general sessions judge. The "special judge" has the same authority as the general sessions judge to issue search warrants; in fact, we find no limitations as to the exercise of his official duties due to the "special" status. Secondly, we view Tenn.Code Ann. § 8–18–109, requiring a filing of the documentation with the county court clerk, as applicable to the sitting general sessions judge under a term of office, not the "special judge." Tenn. Code Ann. § 16–15–209 is applicable to the latter; that statute does not contain mandatory language with respect to filing with the clerk. That the "special judge" had been properly designated on the date the search warrant was issued is, in our view, the critical fact. The proof in this instance established that.

Supplemental briefs have been filed regarding the applicability of *State v. Barrett*, 840 S.W.2d 895 (Tenn.1992). The holding in *Barrett* would have a bearing on the validity of the search warrant only if its issuance had been by authority of the office of city judge. Because Judge Maxey acted as a judge of the general sessions court, it is not applicable. Furthermore, the record, as might be expected, has not been sufficiently developed for appropriate review.

## III

■ The defendant argues that the affidavit in the search warrant failed to allege a crime. We disagree.

A number of authorities require a "common sense review" of the content of a search warrant. In this instance, the search warrant provides that "marijuana plants were growing on the above described property."

Art. 1, § 7 of the Tennessee Constitution proscribes general warrants "to search suspected places ... [where] offences are not particularly described and supported by evidence...." A specific requirement of the fourth amendment to the United States Constitution is that no warrants will issue except those "particularly describing the ... things to be seized." In *People v. Schmidt*, 172 Col. 285, 473 P.2d 698 (1970), the nature of the description requirement was a subject of discussion:

**350**

If the purpose of the search is to find a specific item of property, it should be so particularly described in the warrant as to preclude the possibility of the officer seizing the wrong property; ...

2 W. LaFave, *Search and Seizure* § 4.6(b) (2d ed. 1987).

Descriptions which have been upheld include "narcotic drugs"; "marijuana, dangerous drugs, stimulant drugs, and hallucinogenics"; "controlled substances"; and "narcotics, dangerous and narcotics paraphernalia." *Id.* A more general warrant for "stolen property" has been held inadequate in a number of cases. LaFave at § 4.6(c).

The thrust of these cases is that the property to be seized must not only be described as "stolen" but referred to with specificity, i.e., "stereo tapes or players." *See People v. Holmes,* 20 Ill.App.3d 167, 312 N.E.2d 748 (1974). Similarly, a search warrant must describe those items as contraband when they are illegal by virtue of the nature of the use. *See State v. Fitanides,* 131 N.H. 298, 552 A.2d 1379 (1988).

Search warrants specifying "drugs" have been upheld only because other portions of the warrant refer to the drugs as illegal. "Marijuana" or "any illegal drugs" is sufficient to satisfy the constitutional and statutory requirements. LaFave at § 4.6(b) (Supp. 1993).

These authorities lead us to the inevitable conclusion that the search warrant, in this instance, particularly described marijuana, a clearly illegal substance. *See* Tenn.Code Ann. § 40–6–102. The search warrant properly alleged an illegal activity.

### IV

■ The search warrant contained an error of reference. "Mike Phillips" was initially identified as the affiant. At the conclusion of the affidavit, however, the signature of Dorris Weakley, Sheriff of Cheatham County, appears on the affidavit. It is attested to by the issuing magistrate. The error is as obvious as it appears inadvertent. It does not qualify, as the defendant suggests, as a false allegation, recklessly made, so as to render the affidavit ineffective. In *State v.*

*Little,* 560 S.W.2d 403, 407 (Tenn.1978), our Supreme Court established two circumstances authorizing the impeachment of a search warrant affidavit otherwise sufficient on its face:

(1) a false statement made with intent to deceive the Court, whether material or immaterial to the issue of probable cause, and

(2) a false statement, essential to the establishment of probable cause, recklessly made.

This mistake appears to have been unintentional. It does not relate to the establishment of probable cause. The testimony established that Mike Phillips had nothing to do with the case.

The judgment is affirmed.

SCOTT, P.J., and BIRCH, J., concur.