# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## JULY 1998 SESSION



**FILED**

**December 10, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | No. 02C01-9709-CC-00363 |
| | ) | |
| Appellee | ) | |
| | ) | Henry County |
| vs. | ) | |
| | ) | Honorable Julian P. Guinn, Judge |
| **WILLIAM DORRIS BUCY, II,** | ) | |
| | ) | (Possession of marijuana with the |
| Appellant. | ) | intent to deliver or sell; possession of |
| | ) | drug paraphernalia) |

FOR THE APPELLANT:

MATTHEW M. MADDOX
MADDOX, MADDOX, & MADDOX
P. O. Box 430
Huntingdon, TN 38344

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

MARVIN E. CLEMENTS
Assistant Attorney General
Criminal Justice Division
425 Fifth Ave. North
2d Floor, Cordell Hull Bldg.
Nashville, TN 37243-0493

ROBERT "GUS" RADFORD
District Attorney General
P. O. Box 686
Huntingdon, TN 38344

TODD ROSE
Assistant District Attorney General
P.O. Box 94
Paris, TN 38242

OPINION FILED: _____

**AFFIRMED**

JAMES CURWOOD WITT, JR.
JUDGE

**OPINION**

A jury in the Henry County Circuit Court convicted the defendant, William Dorris Bucy, II, of possession of more than one-half ounce of marijuana with the intent to manufacture, deliver, or sell,[1] and possession of drug paraphernalia.[2] The trial court sentenced the defendant to one year for possession of marijuana, a class E felony, and to a concurrent sentence of eleven months and twenty-nine days for possession of drug paraphernalia, a class A misdemeanor. The trial court ordered the defendant to serve six months of his sentence in the county jail and the balance on intensive probation. In addition, the trial judge imposed fines of $5,000 and $750. In this appeal, the defendant contends that the trial court erred in denying his motion to suppress the materials obtained through the use of invalid search warrants and that the trial court abused its discretion in admitting various irrelevant but prejudicial items into evidence. We affirm the defendant's convictions.

## I. Facts

The defendant does not challenge the sufficiency of the evidence; however, in order to place the legal issues in context, we begin with a review of the facts. On April 4, 1996 at 4:15 p.m., Gary Vandiver, an investigator for the Henry County's Sheriff Department, requested and received a warrant to search a residence at 85 Puryear Crossland Road for explosives. He requested the warrant based on information that the defendant had stolen explosives from the National Guard.[3] A number of other officers met Vandiver at the Bucy residence where the defendant lived with his parents. Shortly thereafter, the defendant drove past and the officers stopped his car and placed him under arrest. During the search of the defendant's bedroom, the officers discovered three plastic baggies containing a

---

[1]     Tenn. Code Ann. § 39-17-417 (a)(4)(g)(1) (1997).

[2]     Tenn. Code Ann. § 39-17-425 (1997).

[3]     According to the warrant, the magistrate granted the officer's request at 4:15 p.m. on April 9, 1996. Several officers who testified at the suppression hearing, however, stated that the search began as early as 3:00 p.m.

2

combined total of sixteen grams of a leafy green substance and numerous other items that could be related to the illegal use of drugs or to the drug trade. The officers then secured the house and obtained a warrant that would allow them to search for and seize the controlled substances and related drug paraphernalia.[4] As a result of the second search, the officers seized numerous items including a set of electronic scales, several hemostats, three film canisters containing seeds, a plastic bag with a white powder residue, a roach clip, rolling papers, a smoking pipe, a "dugout," a pocket hitter, a Crown Royal bag, small plastic bags, several photographs, a 1992 edition of the Paris Post Intelligencer, and the sixteen grams of a leafy substance which would prove to be marijuana. Virtually all of these items were found in the defendant's bedroom. The police also confiscated $166 in cash that the defendant had on his person. Except for a single detonator cap on an end table in the living room, no explosives or other items related to explosives were found.

The grand jury indicted the defendant for possession of more than a half ounce of marijuana with the intent to manufacture, deliver, or sell and for possession of drug paraphernalia. Defense counsel moved to suppress the items seized from the defendant's bedroom contending that the first search warrant was facially invalid because the affidavit does not identify the informant as either a citizen or a confidential informant, the information in the affidavit is stale, the affidavit on its face does not provide sufficient probable cause to believe that the Bucy residence contained "explosives," and the description of the property to be seized is too general. At the suppression hearing, the defense and the state stipulated that if the original warrant were invalid, the second warrant obtained as a result of the search under the authority of the first warrant would also be invalid.[5] The defendant also argued that the affidavit contained false statements. At the

---

[4] The second warrant was issued April 9, 1996 at 6:05 p.m.

[5] We agree. See Wong Sun v. United States, 371 U.S. 471, 485, 83 S. Ct. 407, 417 (1963); Williams v. State, 854 S.W.2d 102 (Tenn. Ct. App. 1992). Therefore, we need not discuss the second warrant in any detail.

conclusion of the hearing, the trial judge found that the state's witnesses were credible and logical and that the defense witnesses were lying. He concluded that the officer did precisely what he should have done with the information he had at his fingertips and overruled the defendant's motion. The trial court made no specific factual findings and drew no legal conclusions concerning the defendant's allegations of insufficiency of the affidavit.

At trial, several police officers testified for the state. The marijuana as well as the other property seized in the raid was admitted into evidence. The defense called two witnesses. A neighbor testified that the police had arrived at the Bucy house before 2:00 p.m. on the day of the search, and Investigator Gary Vandiver testified that according to the warrant, it was issued at 4:15 p.m. The jury found the defendant guilty on both counts. After a sentencing hearing, the trial court sentenced the defendant to serve an effective one-year sentence in split confinement with six months in the county jail and the remainder on intensive probation.

## II. The Validity of the First Search Warrant

In this appeal the defendant contends that the property seized from his home should have been suppressed. He argues that the original search warrant was based upon an affidavit that was insufficient on its face to establish probable cause, that the language in the warrant and the affidavit does not describe the property to be seized with particularity, and that the affidavit contains false information.

In determining this issue we are bound by certain well-established rules governing appellate review in such cases. A magistrate's decision to issue a search warrant requires the exercise of judicial discretion and constitutes a judicial act. Hampton v. State, 148 Tenn. 155, 252 S.W. 1107 (1923). Although the magistrate's judgment is entitled to great deference, State v. Melson, 638 S.W.2d 342, 357 (Tenn. 1982), an appellate court may invalidate a search warrant when the

4

content of the affidavit considered by the magistrate is insufficient, as a matter of law, to satisfy the constitutional requirements of probable cause.  State v. Longstreet, 619 S.W.2d 97, 98-99 (Tenn. 1981).  Affidavits given in support of search warrants should be "looked at and read [by an appellate court] in a common sense and practical manner."  Melson, 638 S.W.2d at 357.  The affiant's words should be given their natural meaning and interpretation.  State v. Smith, 477 S.W.2d 6, 8 (Tenn. 1972).

The affidavit must set forth on its face facts which establish probable cause before a search warrant may issue.  Tenn. Code Ann. § 40-6-104 (1997); Tenn. R. Crim. P. 41(c).  Judicial review of the existence of probable cause does not include looking to other evidence known or possessed by the issuing magistrate or the affiant.  State v. Moon,  841 S.W.2d 336, 338 (Tenn. Crim. App. 1992); State v. Jacumin, 778 S.W.2d 430, 432 (Tenn. 1989).

In this case, the defendant contends that the affidavit given in support of the issuance of the search warrant was insufficient as a matter of law to satisfy the probable cause requirement of article I, section 7 of the Tennessee Constitution. The affidavit in question states:

> Affiant recieved information from Christina Yoke that on or about first week of March, 96 William Dorris Bucy, II, also known as Billy Bucy, gave her three ziplock plastic bags containing Dynamite.  Bucy asked her to keep it for him.  Bucy told her that he stole this from the National Guard and that he had stolen other things from National Guard when he was [a] member about two years ago.  Christina Yoke kept Dynamite in her home at 1885 Puryear Crossland Rd.  On or about last week of March Christina Yoke and Adam Kennedy took Dynamite and left it off of Dumas Rd.  Adam Kennedy told Christina Yoke's mother, Kelly Yoke, about this. Kelly Yoke called Bucy, who demanded to know ware [sic] Dynamite was, wanting it back.  Out of fear Kelly Yoke moved Dynamite to Murray Ky.  On Apr. 9, 96, Dep. Stan Pinson, Explosive Expert, located Dynamite in Murray, Ky, making identification.  Due to Bucy making statements to Christina Yoke and Adam Kennedy that he had more property belonging to Nat. Guard it is believed that Bucy has more Explosives at his residence.  It is great interest in public safety that

5

the Explosives be located due to great danger to the
public.

## A. Reliability of the Informant

First, we address the question of whether the affidavit identifies the affiant's source as a citizen-informant. When probable cause is supplied by an affidavit and the informant is a professional informant drawn from the "criminal milieu," Tennessee requires the application of the two-pronged Aguilar-Spinelli test.[6] State v. Cauley, 863 S.W.2d 411, 417 (Tenn. 1993); State v. Jacumin, 778 S.W.2d 430, 431 (Tenn. 1989). However, when the source of the information is a citizen informant, the affidavit is not subject to the same standard of scrutiny. Melson, 638 S.W.2d at 354. In the case of citizen-informants, the reviewing court must determine whether the issuing magistrate had a substantial basis for crediting the hearsay. Id at 355. (Citations to other cases omitted). That is, within the four corners of the affidavit, the internal content must intrinsically prove the truth of the citizen's word. Id. (citations omitted).

Generally a citizen-informant is one who volunteers information to the authorities spontaneously and from a sense of civic responsibility or for reasons of personal safety rather than for remuneration, revenge, or some other advantage. State v. Smith, 867 S.W.2d 343, 347 (Tenn. Crim. App. 1993) (citing State v. Paszek, 184 N.W.2d 836, 842-843 (Wis. 1971)). The affiant must include in the affidavit statements from which the magistrate may determine whether the source of the information qualifies as a citizen-informant. Smith, 867 S.W.2d at 348. Whether the affidavit provides this information directly, by implication, or by inference, is immaterial. Id. However, the status of the source must be apparent before the less stringent Melson standard may be used to test the validity of the warrant. Id.

---

[6]  See Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584 (1969).

In this instance, the affidavit does not directly state that the sources of the officer's information were citizen-informants. However, the affidavit discloses other relevant facts. Christian (Christina) Yoke is the daughter of Kelly Yoke. At that time, Ms. Yoke and her daughter lived together at an address located not far from the Bucy residence. The words on the affidavit referring to a confidential informant are crossed out. Moreover, from the facts that Christian Yoke reports, one can infer that she was similar to an "innocent bystander" who observed some suspicious actions and reported those actions to the police. Although the words "citizen-informant" do not appear, a "common sense and practical reading" of the affidavit demonstrates that Christian Yoke was, in fact, a citizen-informant and that the affidavit is subject to the less rigorous Melson standard. See Smith, 867 S.W.2d at 347. In addition, the affidavit reflects that the police corroborated some of Yoke's information by locating the dynamite in Murray, Kentucky. Therefore, we find that the magistrate had a substantial basis upon which to conclude that the information Christian Yoke provided was reliable. Melson, 638 S.W.2d at 355.

## B. Staleness

Next, we consider whether the information provided by the informants was too stale to constitute probable cause for the issuance of a search warrant. The defendant contends that the information is five or six weeks old and too stale to support probable cause. After carefully reviewing the facts and circumstance of this case and considering the applicable law, we conclude that the age of the information is of no importance in determining whether this particular affidavit establishes probable cause to search the Bucy residence.

The circumstances in this instance are rather unusual. The information in this affidavit discloses that the defendant gave Christian Yoke the three bags containing dynamite sometime during the first week of March, 1996. At the same time, the defendant disclosed that he had stolen the explosives and "other things" from the National Guard two years earlier. According to the affidavit,

the defendant told Yoke that he still had some of those "other things" at his residence. After retrieving the dynamite from the place where Yoke's mother had taken the dynamite, the officer applied for and received the warrant to search for "explosives" at approximately 4:00 p.m. on April 9, 1996.

Information that is five or six weeks old may or may not be too stale to support probable cause depending upon the circumstances of the case. State v. Starks, 658 S.W.2d 544 (Tenn. Crim. App. 1983). Staleness must be determined on a case by case basis. State v. Meeks, 876 S.W.2d 121 (Tenn. Crim. App. 1993). When the illegal activity described is ongoing, courts have generally held that the affidavit does not become stale with the passage of time. State v. Thomas, 818 S.W.2d 350 357 (Tenn. Crim. App. 1991). The issuing magistrate must consider "whether the criminal activity under investigation was an isolated event or of a protracted and continuous nature, the nature of the property sought, and the opportunity those involved would have had to dispose of incriminating evidence." Meeks, 876 S.W.2d at 124. Household or personal items are generally not quickly disposed of and the time period may be longer in those instances. State v. Baron, 659 S.W.2d 811, 814 (Tenn. Crim. App. 1983). Weapons and clothing are also likely to be retained for some time after a crime. State v. Florence Smith and Oscar E. Smith, No. 01C01-9103-CC-00076, slip op. at 4 (Tenn. Crim. App., Nashville, Oct. 10, 1991). Highly incriminating or consumable items of personal property are less likely to remain in one place as that which is innocuous or not consumable. Smith, slip op. at 3-4 (citing 2, W. LaFave, Search and Seizure, Sec. 3.7(a) (2nd Ed. 1987)). Search warrants based on information that is out of date may be invalid. State v. Starks, 658 S.W.2d 544, 546 (Tenn. Crim. App. 1983) (information that was more than two months old when warrant was issued was too remote to establish probable cause); State v. Norman Curtis, Keith Chambers, Gina Chambers, and Shelly Bragg, No. 01C01-9607-CC-00313 (Tenn. Crim. App., Nashville, Dec. 1, 1997)(information received one and one-half years and six months prior to date of affidavit is stale).

8

Unlike most other cases, the informant in this instance does not allege that she saw the objects of the proposed search in the defendant's residence more than a month before the issuance of the warrant.[7] She claims that the defendant gave her for safekeeping the property that ultimately became the basis of the search. The defendant also told her that he had "other things" stolen from the Guard at home. Nothing in the affidavit specifies the nature of these items; moreover, the search warrant does not permit the officers to search for these "other things." Under these circumstances, the claim of untimeliness does not negate the presence of probable cause.

## C. Probable Cause

Probable cause for search and seizure purposes means a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to warrant a cautious person to believe that the evidence is in the place to be searched. Lea v. State, 181 Tenn. 378, 382, 181 S.W.2d 351, 352 (1944). Tennessee law requires that "in determining whether or not probable cause supported the issuance of a search warrant only the information contained within the four corners of the affidavit may be considered." State v. Dennis Keith and Timothy Collins, --- S.W.2d ---, No. 02SO1-9604-CC-00035, slip op. at 21 (Tenn., Jackson, Sept. 28, 1998) (emphasis added). Recently our supreme court stated:

---

[7] See, e.g., State v. Thomas, 818 S.W.2d 350 (Tenn. Crim. App. 1991) (informant saw a large quantity of cocaine on the premises during the past ten days); State v. Baron, 659 S.W.2d 811, (Tenn. Crim. App. 1983) (information about household or personal items not stale after six months); State v. Bush, 626 S.W.2d 470 (Tenn. Crim. App. 1981) (informant's observation that defendant was in possession of illegal liquor six days earlier not stale); State v. Ricky C. Conatser, No. 01C01-9602-CC-00050 (Tenn. Crim. App., Nashville, Mar. 27, 1997) (ten-day old information indicating the defendant was keeping cocaine on the premises not stale); State v. Florence Smith and Oscar E. Smith, No. 01C01-9103-CC-00076 (Tenn. Crim. App., Nashville, Oct. 10, 1991)(warrant issued twelve days after murder not stale as items to be searched were weapons, clothing, and papers likely to be retained by the offender), perm. app. denied (Tenn. 1992).

9

> In Tennessee, a finding of probable cause supporting issuance of a search warrant must be based upon evidence included in a written and sworn affidavit. Indeed, an affidavit containing allegations from which the magistrate can determine whether probable cause exists is an indispensable prerequisite to the issuance of a search warrant in this State. The affidavit must set forth facts upon which a neutral and detached magistrate, reading the affidavit in a common sense and practical manner, can find probable cause for the issuance of a search warrant. To ensure that the magistrate exercises independent judgment, the affidavit must contain more than mere conclusory allegations by the affiant.

State v. Johnny M. Henning, --- S.W.2d ---, No. 02S01-9701-CC00065, slip op. at 7 (Tenn., Jackson, June 22, 1998) (citations omitted).

The affidavit states that the defendant asked the informant to keep three plastic bags containing dynamite for him. He told her that he had stolen the dynamite from the National Guard two years earlier. The defendant also told her that he had stolen "other things" from the Guard and according to the affidavit, made statements to Yoke and another person that he had more property belonging to the Guard at his residence. The natural meaning of the language and a common sense, practical reading of the affidavit as a whole confirms that the defendant had possession of dynamite and indicates, not only that he had stolen items from the National Guard, but also that he still had at least some of these at his residence. The confirmed possession of dynamite, a specific form of explosive material, suggests that the "other things" may have included other forms of explosive materials. Although at the suppression hearing Vandiver conceded that Christian Yoke never told him that Bucy had more explosives at his residence, the actual possession of stolen dynamite and the admissions about having other stolen property, while not overwhelming, are sufficient to establish probable cause.

### D. A General Warrant

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution require that items to be seized pursuant to a search warrant must be "particularly described." Henning, slip op. at 7. Both

10

state and federal constitutions proscribe general warrants in order to control governmental intrusion upon a citizen's privacy and property rights and to limit the discretion of the officers conducting the search. Henning, slip op. at 10 (citing Marron v. United States, 275 U.S. 192, 48 S. Ct. 74 (1927)).

A description is considered sufficient if the executing officers can identify with reasonable certainty the things which they are authorized to seize. Meeks, 876 S.W.2d at 126 (quoting from W. LaFave and J. Israel, Criminal Procedure, § 3.4(f) (2d ed. 1992)). To satisfy the particularity requirement, a reviewing court should take into account the nature of the items involved. Meeks, 876 S.W.2d at 126. If the purpose is to seize

> any property of a specified character which, by reason of its character, and of the place where and the circumstances under which it may be found, if found at all, would be illicit, a description, save as to such character, place and circumstances, would be unnecessary and ordinarily impossible.

Lea v. State, 181 Tenn. 378, 382, 181 S.W.2d 351, 352 (1944). If, however, the item to be seized can ordinarily be found among other lawfully possessed objects of the same general classification or description, then the description requires greater care. Meeks, 876 S.W.2d at 126.

In this instance, the search warrant and the affidavit use the word "explosives" to describe the property to be seized. Although the criminal code does not define "explosives," Tennessee Code Annotated section 68-105-102(a) defines explosives as "any chemical compound or other substance or mechanical system intended for the purpose of producing an explosion, or that contains oxidizing and combustible units or other ingredients in such proportions or quantities that ignition by detonation may produce an explosion capable of causing injury to persons or damage to property." Tenn. Code Ann. § 68-105-102(a) (1996). Possession of explosives or explosive components is generally an unlawful act, although there are statutory defenses to some such offenses. See Tenn. Code Ann. §§ 39-14-702, 39-

11

17-1302 (1997). The warrant commanded a search for explosives that were possessed "contrary to the laws of the State of Tennessee."

In Meeks, the court concluded that "cash money, pocket books, fire arms, jewelry, checkbook and clothing items stolen from Gillian robbery" did not describe the items to be seized with sufficient particularity except for the checkbook which was clearly identifiable. 876 S.W.2d at 127. This court has held that the phrase "stolen property and drugs" was insufficient to meet constitutional requirements. State v. Johnson, 854 S.W.2d 897, 900 (Tenn. Crim. App. 1993). The words "controlled drugs," however, may be sufficient to convey the meaning that the drugs are of a dangerous and unlawful nature and to exclude those of an innocent nature such as aspirin. State v. Lewis, 641 S.W.2d 517, 519 (Tenn. Crim. App. 1982).

The warrant in this case describes the property to be seized as "explosives contrary to the laws of the State of Tennessee." In Johnson, this court found that the phrase "stolen property and drugs" constituted a general warrant, Johnson, 854 S.W.2d at 900, but the court acknowledged that warrant references to "drugs" have been upheld "because other portions of the warrant refer to the drugs as illegal." Id. In the present case, the warrant references "explosives" that are held "contrary to the laws of the State of Tennessee." We find that the description of the property as "explosives" in essence referred to contraband and meets the constitutional requirement that the property to be seized be "particularly described."[8]

### E. False Statements

_____

[8] Similarly, in Lea v. State, 181 Tenn. 378, 181 S.W.2d 351 (1944), our supreme court held that "intoxicating liquors in violation of the law "was sufficient even though it did not specifically negate those liquors that could be lawfully possessed such as beer, ale, and wine. The phrase "forged t-shirts" was found sufficient in State v. Ferguson, 703 S.W.2d 179, 180 (Tenn. Crim. App. 1985).

The defendant complains that the search warrant affidavit contained false or misleading statements; however, we conclude that the defense has failed to establish that the affidavit contains any false statements at all.[9] The trial judge, as the trier of fact, weighed the testimony, determined the credibility of the witnesses and resolved the inconsistencies in the evidence in favor of the state. The trial court found that the Yokes' testimony was not credible and that the Yokes were willing to perjure themselves to help the defendant.[10] Because a trial court's determination at a suppression hearing is presumptively correct on appeal, State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994), the findings are binding upon this court unless the evidence contained in the record preponderates against them. Stephenson, 878 S.W.2d at 544; State v. Aucoin, 756 S.W.2d 705, 710 (Tenn. Crim. App. 1988). The trial court's determination that the affidavit contained no false or misleading information will not be disturbed on appeal.

## II. The Second Warrant

When the invalid warrant was executed, the officers discovered contraband consisting of marijuana and other drug-related materials. A second warrant permitting the officers to seize the unlawful materials was then issued. The parties agreed that had the first warrant been invalid, the second warrant would also be invalid as "fruit of the poisoned tree." The defendant has made no attack on the second warrant except the attack on the first warrant as a predicate for the second warrant. Having determined that the first warrant was valid, we find that the

---

[9] If a search warrant is valid on its face, it may be impeached only if the defense establishes that the affidavit contains (1) a false statement, either material or immaterial to probable cause, made with the intent to deceive the court, or (2) a false statement essential to probable cause that was recklessly made. State v. Little, 560 S.W.2d 403, 407 (Tenn. 1978).

[10] At the suppression hearing, Christian Yoke testified that she did not know where the defendant had obtained the dynamite. She said that she just assumed that he had stolen it from the National Guard about two years ago. She also denied telling the officer that the defendant said he had stolen other property from the National Guard. Kelly Yoke, Christian's mother, testified that she was the one who had placed the dynamite on Dumas Road and that Bucy had never indicated that he wanted the explosives back. Gary Vandiver, on the other hand, testified that the Yokes gave him the information contained in the affidavit.

13

discoveries made pursuant to its execution supplied probable cause for the issuance of the second warrant which authorized the seizure of the marijuana and other drug paraphernalia.

### III. Relevancy of Evidence

The defendant challenges the relevancy of various items that the trial court admitted into evidence over his objections. The items include a plastic bag with a white powder residue, a 1992 edition of the Paris Post Intelligencer, business cards, a hunting and fishing license, and a plastic bag with some leafy material in it. The police seized all of this evidence during the search at the Bucy residence.

Rule 401 of the Tennessee Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence is admissible unless it is prohibited by constitution, rule, or court decision, and irrelevant evidence is inadmissible. Tenn. R. Evid. 402. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Tenn. R. Evid. 402.

In this case, the state was required to prove that the defendant possessed the marijuana with the intent to manufacture, sell, or deliver, Tenn. Code Ann. § 39-17-417(a)(4), (g)(1) (1997), and that he possessed drug paraphernalia with the intent to introduce a controlled substance into the human body. Tenn. Code Ann. § 39-17-425(a)(1) (1997). We find that the plastic bags, the hunting and fishing license, and the business cards were properly admitted. The newspaper article and the bags with the unidentified white residue and leafy material should have been excluded.

14

The numerous small plastic bags, which the state's witnesses testified are often used to package a controlled substance, were relevant to the question of the defendant's intent to sell or deliver marijuana. The fact that these baggies were found in proximity to electronic scales, seeds for the propagation of marijuana, and a larger bag containing sixteen grams of marijuana make the plastic bags particularly relevant. The trial court did not err in admitting them into evidence.

The hunting and fishing license and the business cards were of some probative value to demonstrate that the bedroom in which the incriminating materials were found belonged to the defendant. However, even if the license and the cards were of no probative value, we cannot see how the admission of such innocuous evidence could have been prejudicial to the defendant. See Tenn. R. App. P. 36(a).

The 1992 edition of the Paris Post Intelligencer reported at length on the destruction of a large crop of marijuana in Henry County. The article concerned events unconnected with the defendant that occurred approximately four years prior to his arrest for these offenses and addressed no issue relevant to the case. The state argues that article demonstrated the defendant's long-standing interest in the drug trade. We find that, in this instance, the unfair prejudicial effect of the rather sensational article substantially outweighs its minimal probative value. Tenn. R. Evid. 403.

The admission of the small plastic bags containing the unidentified materials is not as easily resolved. The bag containing the white powder residue is of particular concern because it is evidence of another crime and subject to the requirements of Rule 404(b). The rule requires a jury-out hearing and specific determinations by the trial judge. The record indicates that the trial court did not

15

fulfill these requirements.[11] Without a hearing and appropriate findings, the bag with the white powder residue was inadmissible. Moreover, the fact that the material in neither bag was identified as containing a controlled substance greatly reduces the probative value of the evidence.[12] Pursuant to Rule 403, both bags should have been excluded because their probative value was substantially outweighed by the danger of unfair prejudice.

Although the trial judge should not have admitted the 1992 newspaper article and the two bags containing unidentified material, the defendant is not necessarily entitled to relief. The Tennessee Rules of Appellate Procedure provide that a final judgment shall not be set aside "unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(a). Given the strength of the state's case against the defendant, the admission of the newspaper article and the two plastic bags could not have affected the jury's verdict.

**Conclusion**

The judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., Judge

CONCUR:


_____
JOE G. RILEY,  Judge



_____
ROBERT W. WEDEMEYER, Special Judge

_____

[11]     The trial judge summarily denied the defendant's motion in limine because it was filed on the day of trial, and when the defense objected to the admission of the bag with the white powder on the grounds of relevancy, the court overruled the objection stating, "Let's hear what the man has got to say."

[12]     Scott Wyrick, the officer who seized the bags, testified that the residue of white powder was too small to be tested.