[Crim. No. 12915. First Dist., Div. One. June 3, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
WILLIAM RICHARD PARIS et al., Defendants and Respondents.

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Linda Ludlow, Deputy Attorneys General, for Plaintiff and Appellant.

Harold J. Truett, Public Defender, Buford L. Toney, Assistant Public Defender, and W. O. Weissich for Defendants and Respondents.

**OPINION**

**MOLINARI, P. J.**—Defendants were charged with violating Health and Safety Code sections 11378, 11351, 11359 and 11350.[1] Defendant Paris was also charged with violating Penal Code section 12020 (possession of a weapon, a sap). Defendants moved to suppress evidence obtained as a result of a search and seizure pursuant to Penal Code section 1538.5. The motions were granted. The People sought review of the suppression order by writ of mandate to the Court of Appeal. The petition was denied without opinion. Thereafter the superior court ordered the action

---

[1]Defendant Paris was charged with seven counts and defendant MacGregor was charged with four counts.

against defendants dismissed pursuant to Penal Code section 1385 on the basis that the prosecution had no evidence other than that which was suppressed. The People filed an appeal from the order of dismissal. In her brief defendant MacGregor requested that the appeal of the People be dismissed under the authority of *People* v. *Carrington,* 40 Cal.App.3d 647 [115 Cal.Rptr. 294]. Defendant Paris, by letter, requested an affirmance of the trial court's order of dismissal under the authority of *Carrington.*

*Carrington* holds that where the Court of Appeal denies by minute order the prosecution's petition for a writ contesting the trial court's grant of the motion to suppress evidence, such a denial constitutes review by "writ or decision" within the meaning of Penal Code section 1538.5, subdivision (j), and precludes further review. (40 Cal.App.3d 647, 649-650.)[2] Subdivision (j) of Penal Code section 1538.5 provides, in pertinent part, that "If the people prosecute review by appeal or writ to decision, or any review thereof, in a felony or misdemeanor case, it shall be binding upon them."

The rationale of *Carrington* is that the legislative purpose underlying section 1538.5 was to reduce the unnecessary waste of judicial time and effort in the determination of search and seizure questions and that in keeping with this purpose it was the plain command of section 1538.5 that once the People obtain a decision from the appellate court either by appeal or writ they may not relitigate the lawfulness of the search in the trial court or on appeal. (40 Cal.App.3d at p. 650.)

*Carrington* holds that the term "decision" in subdivision (j) of section 1538.5 does not mean a decision expressed in a written opinion but is "a determination arrived at after consideration" of the petition for a writ on the basis of the full record of the evidence presented at the hearing on the motion. (40 Cal.App.3d at p. 650.)

We note, however, that in *People* v. *Medina,* 6 Cal.3d 484 [99 Cal.Rptr. 630, 492 P.2d 686], the Supreme Court observed that petitions for writs under Penal Code section 1538.5 may come within the principle of discretionary denial and that, accordingly, it may not be contended that an appellate court's denial of such a petition without opinion was a determination on the merits even though it patently appears from the record that the denial of the writ could not have rested on any

---

[2]No petition for a hearing by the Supreme Court was filed.

procedural defect. (At p. 491.) *Medina* is cited in *Carrington* but recognition is not given to this observation.

In the present case the People's petition for a writ of mandate under section 1538.5 was denied without opinion. The record in that case, which we judicially notice, does not indicate whether the denial of the petition was on the merits or whether it was a discretionary denial. In the absence of an affirmative indication in the record that the petition was determined on the merits we may not conclude that it was so determined. Since under the state of the record it may also be concluded that the appellate court acted within the principle of discretionary denial, we may not hold that the determination against the People was conclusive under the doctrine of res judicata or was such that it must be adhered to under the doctrine of the law of the case.

In reaching this conclusion we point out that we are in accord with *Carrington* that the term "decision" in subdivision (j) of section 1538.5 does not mean a decision expressed in a written opinion. A decision affirmatively indicating that the denial of the petition was on the merits satisfies the mandate of the statute.

In view of the foregoing conclusion we proceed to consider the question whether the affidavit presented by Sergeant Hinnenberg was sufficient to support the issuance of the search warrant. The affidavit states that the following information was given to him by Monty J. Martin: On July 16, 1973, at approximately 3 p.m., Martin went to a residence on Shady Lane in Ross to install a telephone. Martin had been a telephone installer for four and one-half years and a reserve police officer with the San Rafael Police Department for approximately seven months. During the course of his reserve duties he attended a 40-hour basic police course conducted by the San Rafael Police Department. Two or three hours of the course were related to the identification and investigation of narcotics and marijuana cases. During the class Martin was shown marijuana in all stages of growth and processing and observed a "brick" of marijuana, which was described to him as a common form of packaging marijuana in one kilo packages. Martin was also shown how a kilo is commonly packaged for ordinary street marketing.

Martin entered the premises with the permission of the female occupants. In an effort to locate where service wires entered the building, Martin went outside the building. He saw the lines entering from the side

and from the rear. He went back inside to trace where the service lines entered. In the rear of the residence, Martin saw a door which was open about three feet. He pushed it open further in order to enter and hook up the lines. He saw a stack of objects on the floor of the room which to him looked like "bricks of marijuana." The bricks were about the same size as ordinary building bricks and were stacked about three high and three wide. They were wrapped in opaque green paper.

Martin closed the door to the room and finished his work installing the two new telephones and checking the two old telephones. At 4 p.m., about 15 minutes to ½ hour after Martin saw the "bricks," a white male adult entered the residence and talked to Martin briefly about the installation of the telephones. Martin, finishing his work in a bedroom, was reapproached by the adult male who told him not to enter any of the back rooms of the house. Martin understood this to mean the room in which he had seen the "bricks." At 4:15 p.m., Martin finished his work and left the residence. The work order was made out in the name of William Paris.

In *Aguilar* v. *Texas,* 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], a two-pronged test was set out as applicable to an affidavit based on an informant's hearsay statement. This test was reiterated in *Skelton* v. *Superior Court,* 1 Cal.3d 144 [81 Cal.Rptr. 613, 460 P.2d 485]. Under *Aguilar* and *Skelton* the two requirements to be met are: (1) the statement of the informer must be factual in nature rather than conclusionary, and it must indicate that the informer had personal knowledge of the facts related; and (2) the affidavit must contain some underlying factual information from which the issuing magistrate can reasonably conclude that the information supplied by the informant was credible or his information reliable. (*Aguilar* v. *Texas, supra,* at pp. 114-115 [12 L.Ed.2d at pp. 728-729]; *Skelton* v. *Superior Court, supra,* at p. 152; *People* v. *Hamilton,* 71 Cal.2d 176, 180 [77 Cal.Rptr. 785, 454 P.2d 681].)

Before proceeding to apply the foregoing test to the instant case we observe that the state sustains its initial burden by virtue of the affidavit itself since "A presumably reliable person has attested to the truth of the matters alleged in the affidavit and a magistrate has in the exercise of his impartial function determined that the affidavit was truthful and acted upon it." (*Theodor* v. *Superior Court,* 8 Cal.3d 77, 101 [104 Cal.Rptr. 226, 501 P.2d 234].) When this initial burden has been met by the prosecution the burden of demonstrating the inaccuracy or falsity of the allegations

in the affidavit for a search warrant must be carried by the defendant. *(Theodor v. Superior Court, supra.)* This rule is consonant with that which states that if the defendant attempts to quash a search warrant the burden rests on him. *(Theodor v. Superior Court, supra; People v. Wilson,* 256 Cal.App.2d 411, 417 [64 Cal.Rptr. 172].) Once the defendant demonstrates that the affidavit contains error the burden then shifts back to the prosecution to show that the inaccuracies were included as the result of misapprehensions. *(Theodor v. Superior Court, supra.)*

In the present case the initial burden imposed upon the state was satisfied by the affidavit of Sergeant Hinnenberg who, as a police officer, was presumed to be reliable. (See *People v. Hill,* 12 Cal.3d 731, 761 [117 Cal.Rptr. 393, 528 P.2d 1].) The burden then shifted to defendants to show that the affidavit contained inaccuracies. They did not, however, seek to controvert the allegations contained in the affidavit by proof or offer of proof showing that it contained inaccuracies, but instead chose to attack the sufficiency of the affidavit as a matter of law. ■ The essence of their challenge to the affidavit is that it shows on its face that it does not meet the two-pronged test of *Aguilar.*

There can be no question that the first prong of the test is satisfied. Sergeant Hinnenberg's informant was obviously speaking from his own knowledge and his statements were factual and not conclusionary.

Adverting to the second prong of the test we observe that it is apparent from a reading of the affidavit that the person identified therein as Monty J. Martin appeared to Hinnenberg to be a "citizen-informant." From the nature of the information given and the circumstances narrated by the informant it was reasonable for Hinnenberg to conclude that the informant was a witness to a crime. ■ Citizen informants are not subjected with respect to their reliability to the same stringent test as persons who are themselves criminally involved or disposed upon the rationale that such citizens are motivated by good citizenship and their information is imparted in the aid of law enforcement. (*Krauss v. Superior Court,* 5 Cal.3d 418, 421 [96 Cal.Rptr. 455, 487 P.2d 1023]; *People v. Scoma,* 71 Cal.2d 332, 338, fn. 7 [78 Cal.Rptr. 491, 455 P.2d 419]; *People v. Guidry,* 262 Cal.App.2d 495, 497-498 [68 Cal.Rptr. 794]; *People v. Gardner,* 252 Cal.App.2d 320, 324-325 [60 Cal.Rptr. 321]; *People v. Lewis,* 240 Cal.App.2d 546, 549-550 [49 Cal.Rptr. 579].)

Although there is a suggestion in some of the cases that there is a necessity that the People establish to some degree, i.e., by corroboration,

that the information was reliable (see *People* v. *Herdan,* 42 Cal.App.3d 300, 305-306 [116 Cal.Rptr. 641]; *People* v. *Balassy,* 30 Cal.App.3d 614, 621 [106 Cal.Rptr. 461]; *People* v. *Cohn,* 30 Cal.App.3d 738, 745-746 [106 Cal.Rptr. 579]; *People* v. *Abbott,* 3 Cal.App.3d 966, 970 [84 Cal.Rptr. 40]; and see *Krauss* v. *Superior Court, supra,* 5 Cal.3d 418, 421-422), the Supreme Court in the recent case of *People* v. *Hill, supra,* 12 Cal.3d 731, makes it clear that such corroboration is unnecessary when the informant's statements are made upon his personal observations of the commission of a crime. (At pp. 758, 761.) In such a case the informant is presumptively reliable as a "citizen-informant" even though his reliability has not previously been tested. (*People* v. *Hill, supra;* see also *People* v. *Hogan,* 71 Cal.2d 888, 890 [80 Cal.Rptr. 28, 457 P.2d 868]; *People* v. *Mardian,* 47 Cal.App.3d 16, 32 [121 Cal.Rptr. 269].)

The presumption of reliability articulated in *Hill* appears to be a principle accepted by the federal cases. (See *United States* v. *Unger,* 469 F.2d 1283, 1286-1287; *United States* v. *Bell,* 457 F.2d 1231, 1238-1239; *United States* v. *Mahler,* 442 F.2d 1172, 1174-1175; *McCreary* v. *Sigler,* 406 F.2d 1264, 1268-1269.) *Unger* is of particular interest since its facts are substantially similar to those of the instant case. In *Unger,* a prosecution for possession of unregistered firearms, the affidavit for a search warrant made by a police officer stated that he had seen weapons in a locker in a basement. There was no corroboration of the informant's status as a "citizen." Unlike the instant case the name and occupation of the informant was not revealed. A contention that the informant was not reliable was rejected by the reviewing court on the basis that the internal context of the affidavit intrinsically proved the truth of the information imparted to the affiant police officer because the affidavit set forth with specificity "the facts and circumstances which lend credence to belief that a crime was being committed or criminal activity was evidenced from personal observation." (469 F.2d at p. 1286.)

In the present case the statements of the informant identified as Monty J. Martin, a telephone installer and a reserve police officer, not only gave information which was obviously based on his personal observations but set forth with specificity the facts and circumstances which lend credence to the belief that a large quantity of marijuana was located in the premises for which a search warrant was sought. Martin, as a witness to a crime, was presumptively reliable as a "citizen-informant." The burden was upon defendants to show that the information in the affidavit was inaccurate. It was also incumbent upon them to show that

the person identified as Monty J. Martin did not exist or that he was not the person he represented himself to be. They have not met this burden.

*Theodor* holds that in a motion to suppress a defendant may challenge the factual veracity of an affidavit in support of a search warrant and delineates the procedure and showing necessary in prosecuting the attack upon the truthfulness of the information therein contained. (8 Cal.3d at pp. 90-103.) Defendants did not avail themselves of this procedure. Accordingly, the presumption that the person identified as Monty J. Martin, a witness to a crime, gave reliable information as a "citizen-informant" remained undisturbed.

The order is reversed.

Sims, J., and Elkington, J., concurred.