[Crim. No. 13842. First Dist., Div. One. Sept. 30, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
WILLIAM LEE SCHULLE et al., Defendants and Respondents.

810

## COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Appellant.

Peter F. Windrem for Defendants and Respondents.

## OPINION

**MOLINARI, P. J.**—The People appeal from an order dismissing a criminal action following the granting of defendants' motion to suppress evidence pursuant to Penal Code section 1538.5. The question presented is whether the motion to suppress was properly granted.

Lieutenant George D. Roxon of the Lake County Sheriff's office presented to the magistrate an affidavit for issuance of a search warrant which stated that on June 6, 1974, he was contacted by Kimberly M. Simmons, who gave him the statement attached to his affidavit and incorporated therein by reference. In his affidavit Roxon states that Miss Simmons told him "that on a number of occasions she has seen marijuana, recognizes its appearance, has smoked it and recognizes its smell."

The statement taken from Miss Simmons which was attached to Roxon's affidavit as Exhibit "A" reads as follows:

"Statement of Kimberly R. Simmons (14) taken at Lower Lake High School, 2:15 P.M. 6/6/74.

'I have known by talking to my mother that she and my stepfather William Lee Schulle have been using marijuana since 1968.

'The first time I saw them with marijuana was during the summer of 1971. My mother, stepfather, little sister and I were riding in the car. My stepfather brought out a pipe and a baggie of marijuana. He and my mother smoked it in the pipe.

'That summer my mother planted and raise [sic] about six marijuana plants in pots on our front porch.

'Since about September 1973 I have continually seen my mother and stepfather with marijuana. Sometimes my stepfather smokes it before he goes to work and when he gets home. My mother smokes it with him.

'This morning 6/6/74 I saw about ½ lid in a plastic bag of marijuana in the house. It is in a Red Roi-Tan Cigar can on a dressing table in a small [sic] next to my mother's bed room. K.S.

'At about 8:00 pm 6/4/74 my parents were gone. A person telephoned by the name of "Dan." He told me to tell my stepfather he was coming up that night.

'My parents came home and I gave them the message and left. I returned about 10:00 and Dan was there. He and my stepfather went into the bedroom and were talking about a card board box on the floor. They later shut the door. I wanted to get some clothes out but they wouldn't let me in.

[Signed] Kim Simmons

'They also hid the marijuana under their bed in a Brown filing cabinet,'

[Signed] Kim Simmons

Writt [sic] by
G. D. Roxon"

The search warrant was issued by the magistrate. Pursuant to the search the officers discovered the Roi-Tan cigar can containing marijuana, two plastic baggies of marijuana, a quantity of LSD and amphetamines.

Lieutenant Roxon is a presumably reliable person. Accordingly, when he attested to the truth of the matters alleged in the affidavit, and the magistrate, in the exercise of his impartial function, determined that the affidavit was truthful and acted upon it, the burden of demonstrating the inaccuracy or falsity of the allegations in the affidavit for a search warrant fell upon defendants. (*Theodor* v. *Superior Court,* 8 Cal.3d 77, 101 [104 Cal.Rptr. 226, 501 P.2d 234]; *People* v. *Paris,* 48 Cal.App.3d 766, 771-772 [122 Cal.Rptr. 272].) The defendants did not seek to controvert the allegations contained in the affidavit by proof or offer of proof showing that it contains inaccuracies (in which case the burden would shift back to the prosecution to show that the inaccuracies were included as a result of misapprehensions[1]), but instead chose to attack the sufficiency of the affidavit as a matter of law. The challenge to the affidavit is that it does not meet the second requirement of the two-pronged test of *Aguilar* v. *Texas,* 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], reiterated in *Skelton* v. *Superior Court,* 1 Cal.3d 144 [81 Cal.Rptr. 613, 460 P.2d 485]. It is conceded that the first requirement of *Aguilar* has been met.

Under *Aguilar* the two requirements to be met are: "[1] Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, [citation] the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and [2] some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, [citation] was 'credible' or his information 'reliable.'" (*Aguilar* v. *Texas, supra,* 378 U.S. 108, 114 [12 L.Ed.2d 723, 728-729]; *Skelton* v. *Superior Court, supra,* 1 Cal.3d 144, 152.)

Adverting to the second prong of the test we observe that it is apparent from a reading of the affidavit that the person identified therein as Kimberly Simmons appeared to Roxon to be a "citizen-informant." It was reasonable for Roxon to conclude that Kimberly Simmons was a witness to a crime from the nature of the information given and the circumstances narrated by the informant. "Citizen informants are not subjected with respect to their reliability to the same stringent test as persons who are themselves criminally involved or disposed upon the rationale that such citizens are motivated by good citizenship and their information is imparted in the aid of law enforcement. [Citations.]" (*People* v. *Paris, supra,* 48 Cal.App.3d 766, 772.)

---

[1]See *Theodor* v. *Superior Court, supra,* 8 Cal.3d 77, 101; *People* v. *Paris, supra,* 48 Cal.App.3d 766, 771-772.

■ Corroboration of information received from an informant is unnecessary for search warrant purposes where the informant's statements are made on his personal observation of the commission of a crime. (*People* v. *Hill,* 12 Cal.3d 731, 758, 761 [117 Cal.Rptr. 393, 528 P.2d 1]; *People* v. *Paris, supra,* 48 Cal.App.3d 766, 773.) In such a case the informant is presumptively reliable as a "citizen-informant" even though his reliability has not previously been tested. (*People* v. *Hill, supra; People* v. *Hogan,* 71 Cal.2d 888, 890 [80 Cal.Rptr. 28, 457 P.2d 868]; *People* v. *Paris, supra.*)

In the present case the statements of the informant, identified as Kimberly Simmons, the daughter of defendant Alice Schulle and the stepdaughter of defendant William Schulle and a member of their household, not only gave information which was obviously based on her personal observation but set forth with specificity the facts and circumstances which lend credence to the belief that a substantial quantity of marijuana was located on the premises for which a search warrant was sought. Accordingly, if Kimberly Simmons is deemed to be a "citizen-informant" she is presumptively reliable. (*People* v. *Hill, supra,* 12 Cal.3d 731, 761.)

The immediate inquiry is whether Miss Simmons was a person who fell in the category of a "citizen-informant" at the time of her statement to Roxon. A "citizen-informant" is a citizen who purports to be the victim of or to have been the witness of a crime who is motivated by good citizenship and acts openly in aid of law enforcement. (*People* v. *Guidry,* 262 Cal.App.2d 495, 498 [68 Cal.Rptr. 794]; *People* v. *Gardner,* 252 Cal.App.2d 320, 324-325 [60 Cal.Rptr. 321]; *People* v. *Griffin,* 250 Cal.App.2d 545, 550-552 [58 Cal.Rptr. 707]; *People* v. *Lewis,* 240 Cal.App.2d 546, 550 [49 Cal.Rptr. 579]; see *People* v. *Hill, supra,* 12 Cal.3d 731, 761; *People* v. *Hogan, supra,* 71 Cal.2d 888, 890.) It is reasonable for police officers to act upon the reports of such an observer of criminal activity. (*People* v. *Gardner, supra,* and cases there cited on p. 325; *People* v. *Griffin, supra; People* v. *Lewis, supra.*)

■ A "citizen-informant" is distinguished from a mere informer who gives a tip to law enforcement officers that a person is engaged in the course of criminal conduct. (*Krauss* v. *Superior Court,* 5 Cal.3d 418, 421-422 [96 Cal.Rptr. 455, 487 P.2d 1023]; *People* v. *Hogan, supra,* 71 Cal.2d 888, 891; *People* v. *Griffin, supra,* 250 Cal.App.2d 545, 551; *People* v. *Lewis, supra,* 240 Cal.App.2d 546, 550.) Thus, experienced stool pigeons or persons criminally involved or disposed are not regarded as

"citizen-informants" because they are generally motivated by something other than good citizenship. (*People* v. *Griffin, supra; People* v. *Lewis, supra;* see *People* v. *Scoma,* 71 Cal.2d 332, 338, fn. 7 [78 Cal.Rptr. 491, 455 P.2d 419].) " 'Such an informer rarely offers himself as a witness to crimes already committed. His usual function is to supply a tip in confidence whereby the police may witness a crime or uncover evidence of it for themselves.' " *(People* v. *Griffin, supra; People* v. *Lewis, supra.)* Accordingly, in view of this distinction the courts have recognized that the tests of reliability that must be applied to experienced stool pigeons or to persons criminally involved or disposed do not necessarily apply to every private citizen who aids the police. (*Krauss* v. *Superior Court, supra,* at pp. 421-422; *People* v. *Guidry, supra,* 262 Cal.App.2d 495, 497-498; *People* v. *Lewis, supra,* 240 Cal.App.2d 546, 549-550.)

In the instant case Miss Simmons was clearly a witness to a crime. There is nothing to show that she was an experienced stool pigeon or that she was criminally involved or disposed. The statement by Roxon that Miss Simmons told him that she has seen marijuana and recognizes its appearance and smell are not indicative of criminal activity but are consistent with her observation at her home and in the presence of defendants as narrated in her statement to Roxon. ▮ Miss Simmons' admission to Roxon that she has smoked marijuana, although an admission of criminal activity, does not establish as a matter of law that she was a person criminally involved or disposed so as to compel the conclusion that she was not an innocent victim or bystander but a person who was motivated by something other than good citizenship. The magistrate was justified in relying upon the presumed reliability of Roxon and Miss Simmons and since defendants have not met their burden of showing that the information in the affidavit was inaccurate, the affidavit was sufficient for the issuance of the search warrant.

*People* v. *Scoma, supra,* is distinguishable. In that case the informant was a minor who informed the affiant police officer that the minor had been furnished marijuana by a person named "Dewey," and that the minor's father had reported to the sheriff's office the finding of a shoe box containing marijuana and restricted dangerous drugs in the minor's possession. A warrant for the search of "Dewey's" apartment was issued and resulted in the discovery of marijuana in the purse of the defendant who was in the apartment. The court held that the affidavit for the search warrant was insufficient because there were no facts showing reliability and there was no independent corroboration. (71 Cal.2d 332, 337-340.) The court stated that the "citizen-informer" rationale was not applicable

because *"the informant was apparently himself involved in narcotics traffic."* (Italics added.) (71 Cal.2d at p. 338, fn. 7.) In the present case it is not reasonably probable that an average person would entertain the belief that a minor 14 years of age who had smoked marijuana was a person involved in narcotics traffic in the sense recognized in *Scoma* and as described in *Lewis* and *Griffin.*

Strong reliance is placed by defendant on *People* v. *Legard,* 12 Cal.App.3d 1006 [91 Cal.Rptr. 257]. In that case the affiant police officer stated in his affidavit that a 16-year-old babysitter, identified by name and place of residence, told the officer that he had observed what appeared to be marijuana and three or four bottles of clear liquid at the residence (identified as to address) in which he was babysitting, and that the informant had brought to the officer a bag containing a hypodermic syringe, three needles, some vegetable matter which was identified as hashish, and bags containing marijuana seeds which the informant stated he had obtained from the above-mentioned home while babysitting. The evidence obtained pursuant to the search warrant based on the affidavit was held to be the result of an unreasonable search because the affidavit was defective in that it lacked a statement of circumstances from which the magistrate could conclude that the informant was reliable. (At pp. 1010-1011.) *Legard* relies on *Scoma.* We do not find the rationale of *Legard* persuasive and respectfully conclude that such reliance on *Scoma* is misplaced. Under the rationale of *Lewis* and its progeny down to *Krauss* and *Hill* (which were decided subsequent to *Legard*) the informant in *Legard* was clearly a "citizen-informant."[2]

The order is reversed.

Sims, J., and Elkington, J., concurred.

On October 20, 1975, the opinion was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied November 25, 1975.

---

[2]We are normally disposed to avoid conflict with a decision of another division of this district and it is with reluctance that we respectfully disagree with the rationale of *Legard.* We are constrained to do so by what we perceive to be the rule espoused by our Supreme Court with respect to "citizen-informants." The conflict between our decision and that of *Legard* is one that must be resolved by the Supreme Court. We do take cognizance that in *Legard* a petition for a hearing by the Supreme Court was denied but we note that three of the justices of that court were of the opinion that the petition should be granted.