GILBERTSON, Chief Justice
(dissenting).
[¶48.] I respectfully dissent. I agree with the Court that Hamann needed to have probable cause in order to search Sweedland’s vehicle. However, the tip from the hotel manager, a concerned citizen rather than an anonymous tipster, provided reliable and credible information that was sufficiently corroborated by Ham-ann such that the probable cause requirement was satisfied.
[¶ 49.] The only facts pertinent to the holding in this case are those that were known to Hamann at the time of the traffic stop. Therefore, I restate those facts below.
[¶ 50.] On February 13, 2005, at approximately 10:45 a.m., Hamann received a radio call from a Lawrence County dispatcher advising him as follows: “The manager of the Budget Host advised that four males just left the motel, headed into town, driving Montana Lic/29A8307, Maroon 2000 Olds 4DR. The hallway smells of marijuana, as well as the two rooms that they were staying in. (Room 23 and Room 24).”[14]
[¶ 51.] Over the next six minutes the following transmissions between dispatch and Rische were overheard by Hamann: “Suspects are at Pack Horse[, a local convenience store],” followed by “Just left Pack Horse, headed towards the courthouse,” “Just headed out of town, headed towards Boulder Canyon,” and finally “They are just ahead of me.”
[¶ 52.] At approximately 10:53 a.m., Hamann advised dispatch he had stopped Sweedland’s car. Hamann would later testify that he witnessed no traffic violations, but decided to stop the car to further investigate the information relayed by dispatch. The stop was recorded on Ham-ann’s patrol car video.
[¶ 53.] Hamann exited his vehicle, approached the driver’s side of Sweedland’s vehicle and asked for his driver’s license, proof of insurance and vehicle registration. Sweedland provided the requested documents and Hamann asked him to accompany him to his patrol car. Hamann then performed a pat down search of Sweedland prior to him entering the patrol vehicle. Nothing was found during the pat down search.
[¶ 54.] Once in the patrol vehicle, Ham-ann engaged Sweedland in conversation as to the reason for the stop, telling him of the information received by dispatch from the Budget Host. Hamann asked Sweed-land for consent to search his vehicle, which Sweedland declined by asking what “grounds” he had to conduct the search. Hamann replied that he wanted to “follow through” on the complaint but that it was up to Sweedland. Sweedland again declined stating that there were “no grounds” for a search. After a second request, Sweedland again declined telling Hamann he was tired and wanted “to get going.” Hamann then told Sweedland to remain in the patrol car.
[¶ 55.] At 11:00 a.m., Hamann exited the patrol car and approached the driver’s side door of Sweedland’s vehicle. He asked the three passengers to exit the vehicle on the passenger side doors. After they complied, Hamann looked through *422 the driver’s side window into the interior of the vehicle; his face broke the plane of the window as he appeared to smell and look at the interior of the ear. He then turned off the outside microphone of his patrol car.
[¶ 56.] The events that transpired after the outside microphone was turned off cannot be heard. Nor can the passengers be seen during the remainder of the videotape due to the angle at which Hamann parked his patrol car. All of the facts concerning the remainder of the stop were testified to by Hamann at the suppression hearing or contained in a transcription of the transmissions between the various officers involved and dispatch that was admitted into evidence.
[¶ 57.] Hamann testified that he asked the passengers for their identification in order to run a check. Hamann then returned to his patrol vehicle and transmitted the information to dispatch. The videotape shows that Hamann then exited his vehicle and spoke with the officers on the scene, including Officer Mertens who had arrived on the scene to assist sometime before Hamann finished transmitting the driver’s license information to dispatch.
[¶ 58.] Hamann testified that he told Officer Mertens that he was unable to get consent for a search of the vehicle. Ham-ann then testified that Mertens suggested they perform pat downs on the outer clothing of the three passengers, but that he did not recall Mertens mentioning any safety concerns. Hamann further testified that he did not have any particularized suspicion that the passengers presented a safety threat during the stop.
[¶ 59.] After he asked the passengers if he could search them, Hamann testified the passengers replied “it was okay.” Hamann did not remember in what order the three passengers were searched, but he did recall Teasdale was searched first and that he knew at the time he searched Teasdale that the Montana driver’s license he gave Hamann was suspended.[15] However, before Hamann began the pat down search of Teasdale, Teasdale produced two pipes and some screens from his right coat pocket. Neither of the pipes had been used and did not contain marijuana residue.
[¶ 60.] After being handed the pipes and screens, Hamann searched the area of the car in which Teasdale had been seated and his wingspan area. The search produced a wooden box with marijuana residue in it. Hamann testified that the officers expanded the search to the entire vehicle and found eight to ten pieces of drug paraphernalia and two to three bags of marijuana in the center console and the glove box. Finally, Hamann testified that eleven bricks of marijuana were found in a backpack located in the trunk of the car.
[¶ 61.] Hamann would later testify at the suppression hearing that he witnessed no signs of intoxication or impairment when he spoke with Sweedland and his passengers. He also testified that none of the four men had any of the classic signs of recent marijuana ingestion such as red eyes. Nor did Hamann detect the odor of marijuana in the car or on the clothing of the four men.
ANALYSIS
[¶ 62.] An officer may conduct a war-rantless search of an automobile under the *423 “automobile exception” to the Fourth Amendment warrant requirement once probable cause to conduct the search is clear. Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996) (citing California v. Carney, 471 U.S. 386, 390-91, 105 S.Ct. 2066, 2068-2069, 85 L.Ed.2d 406 (1985); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). The rationale for the “automobile exception” rests upon the “ready mobility” of an automobile, which in and of itself is an exigency sufficient to excuse the failure to obtain a search warrant once probable cause to conduct a search is clearly established. Id. An individual’s reduced expectation of privacy in an automobile also provides further justification for the “automobile exception.” Id. (citing Carney, 471 U.S. at 391-92, 105 S.Ct. at 2069-2070, 85 L.Ed.2d 406 (noting that the highly regulated nature of automobiles makes it subject to a lesser expectation of privacy)). Probable cause to conduct a warrantless search under the “automobile exception” requires that the officer involved “believe that an automobile which he has stopped contains contraband or evidence of a crime.” State v. Peterson, 407 N.W.2d 221, 226 (S.D.1987) (citing Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); State v. Burkman, 281 N.W.2d 436 (S.D.1979)).
[¶ 63.] The facts and circumstances supporting a determination of probable cause may be based on hearsay from an informant. State v. Raveydts, 2004 SD 134, 691 N.W.2d 290. However, just as a magistrate considers the “veracity” or “reliability” and “basis of knowledge” of the person or persons supplying the hearsay information, Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quoting Jones v. United States, supra, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)), so must an officer when evaluating the facts and circumstances in a probable cause determination.

Basis of Knowledge

[¶ 64.]It is not possible to understand the concepts of “reliability” or “veracity,” and “basis of knowledge” in a probable cause inquiry without resorting to the now-abandoned two-prong Aguilar-Spinelli test and the authority upon which it relied. The purpose of satisfying the “veracity” or “reliability” prong and the “basis of knowledge” prong under Aguilar-Spinelli was to ensure that an informant’s tip was not the product of rumor or based on a suspect’s general reputation. Gates, 462 U.S. at 228 n. 3, 103 S.Ct. at 2327 n. 3, 76 L.Ed.2d 527 (quoting Spinelli v. United States, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969)). Both prongs under Aguilar-Spinelli had to be independently satisfied prior to the Supreme Court’s holding in Gates, which ushered in the more relaxed “totality of the circumstances” standard. Id. at 230, 462 U.S. 213, 103 S.Ct. at 2328, 76 L.Ed.2d 527.
[¶ 65.] As such, an affidavit in support of a search warrant, or an officer conducting a warrantless search, had to show knowledge of “facts sufficiently establishing either the ‘veracity’ of the affiant’s informant, or, alternatively, the ‘reliability’ of the informant’s report in this particular case.” Id. at 229, 103 S.Ct. at 2327, 76 L.Ed.2d 527. An officer had to have facts sufficient to satisfy the Aguilar requirement in order to know that the informant was a credible source, or facts to show the tipster’s information was reliable. Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964).
[¶ 66.] The “basis of knowledge” prong required an inquiry as to how the informant came by the information in his re *424 port. Gates, 462 U.S. at 228, 103 S.Ct. at 2327, 76 L.Ed.2d 527. Questions to be asked in this prong of the test included:
What are the raw facts upon which the informant based his conclusions? How did the informant obtain those facts? What precisely did he see or hear or smell or touch firsthand? ... He is concerned not with that part of an affidavit or testimony which provides information about the informant but with the recitation of the story coming from, the informant.
Wayne R. LaFave, 2 Search And Seizure: A Treatise On The Fourth Amendment § 3.3(d) (4th ed.) (quoting Stanley v. State, 19 Md.App. 507, 313 A.2d 847 (1974) (citations omitted)).
Thus, an informant’s allegation that he saw the defendant in possession of counterfeit money is deemed sufficient without any explanation as to how it was determined that the money was counterfeit in character, and an assertion by an informant that he saw illegal drugs or the like at a certain place is regularly accepted without any showing as to how the informant was able to identify the substance.
Id. (citing Collins v. State, 502 S.W.2d 743 (Tex.Crim.App.1973)); Commonwealth v. Gelfont, 264 Pa.Super. 96, 399 A.2d 414 (1979) (holding that when an informant said he “observed a large quantity of suspected marijuana,” “the word ‘suspected’ [is] implied in all search warrants.”). See also Christian v. McKaskle, 731 F.2d 1196 (5th Cir.1984); Jackson v. State, 283 Ark. 301, 675 S.W.2d 820 (1984); State v. Kaukani, 59 Haw. 120, 577 P.2d 335 (1978) (upholding search warrant in which affidavit stated informant “observed what appeared to be marijuana plant”); Capistran v. State, 759 S.W.2d 121 (Tex.Crim.App.1982) (holding layman is permitted to assert that a substance seen by him is marijuana without a showing in the affidavit of his qualifications to recognize it) (citations omitted). Thus, even prior to Gates, the “basis of knowledge” prong did not demand facts as to how the informant knew what he sensed was what he claimed it to be.
[¶ 67.] Subsequently, the holding in Gates, which abandoned the two-prong Aguilar-Spinelli test, eliminated the need to excessively and technically dissect an informant’s tip “with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts [known to the officer].” Massachusetts v. Upton, 466 U.S. 727, 732, 104 S.Ct. 2085, 2087, 80 L.Ed.2d 721 (1984) (quoting Gates, 462 U.S. at 234, 103 S.Ct. at 2330, 76 L.Ed.2d 527). Instead, “ ‘reliability, veracity, and basis of knowledge’ [remain] relevant considerations in finding probable cause; these considerations, however, are ‘not independent, essential elements.’” Gates, 462 U.S. at 230, 103 S.Ct. at 2328, 76 L.Ed.2d 527; Raveydts, 2004 SD 134, ¶ 8, 691 N.W.2d at 292 (quoting State v. Jackson, 2000 SD 113, ¶ 9, 616 N.W.2d 412, 416 (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir.1986))). “[A] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.” Gates, 462 U.S. at 233, 103 S.Ct. at 2329, 76 L.Ed.2d 527 (citing Adams v. Williams, 407 U.S. 143, 146-47, 92 S.Ct. 1921, 1923-24, 32 L.Ed.2d 612 (1972); United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971)). Furthermore, this Court has held that “each element of evidence need not be individually assessed for veracity and basis of knowledge. Rather, the probable cause determination is a function of ‘the totality of relevant circumstances.’ ” State v. Krebs, 504 N.W.2d 580, 588 (S.D.1993) (quoting State v. Zachodni, 466 N.W.2d 624, 629 (S.D.1991)) (quoting *425 Gates, 462 U.S. at 235, 103 S.Ct. at 2330, 76 L.Ed.2d 527; Massachusetts v. Upton, 466 U.S. 727, 732, 104 S.Ct. 2085, 2087, 80 L.Ed.2d 721 (1984)).
[¶ 68.] While the special writing is correct that some jurisdictions require law enforcement to know how an informant knows the odor or appearance of marijuana, there is a split of authority on this issue. Most of the cases cited by the special writing merely note the basis of the informant’s knowledge in passing without holding it a prerequisite for a finding of probable cause, or use basis of knowledge as an indicator of whether the informant is a citizen informant or an informant with a criminal record.[16] In State v. Mordowanec, 259 Conn. 94, 788 A.2d 48 (2002), the Connecticut Supreme Court held a search warrant unconstitutional for lack of probable cause, as no facts were contained in the affidavit as to how the informant knew the odor he detected was that of marijuana. However, in that case the informant was an anonymous caller whose identity or title and place of work were not known to law enforcement rather than a citizen informant. Id. The Connecticut Supreme Court examined the anonymous informant’s veracity, reliability and basis of knowledge and held all were highly relevant in determining probable cause. Id. at 58. However, the central focus was on the greater weight statements by an anonymous informant are given when corroborated by evidence independently gathered by police. Id. at 58. In addition, the anonymous informant’s basis of knowledge was established by merely claiming status as Vietnam Vet without verification or any *426 explanation as to how he acquired his knowledge concerning the odor or appearance of marijuana. Id. at 58.
[¶ 69.] The only other case that supports the spécial writing’s proposition is State v. Rose, 75 Wash.App. 28, 876 P.2d 925 (1994) (Rose I), rev’d by, State v. Rose, 128 Wash.2d 388, 909 P.2d 280 (1996) (Rose II), which was eventually reversed based on the officer’s plain view using a flashlight at night. In Rose I, an affidavit in support of a search warrant used as relevant facts a police officer’s nighttime view, through a window in the defendant’s shed located within the curtilage of the home, using a flashlight and the landlord’s assertion that he had smelled marijuana on the property. Id. at 927-28. When the police officer’s intrusive look in the shed was held unconstitutional, all that remained to support the warrant was the landlord’s naked assertion that he smelled marijuana on the property. The Washington Court of Appeals held that the assertion alone, without any other corroborating facts to support it, was insufficient as it “would not lead a reasonable person to conclude that [the defendant] was involved in criminal activity.” Id. at 932. That court noted that an assertion must be supported by more than a mere personal belief. Id. However, the Washington Supreme Court reversed the holding of the lower court without addressing the sufficiency of the landlord’s tip. Rose II, 128 Wash.2d 388, 909 P.2d 280.
[¶ 70.] Several cases cited by the special writing fail to support the need for facts concerning an informant’s “basis of knowledge” due to other corroboration, or only support the proposition when no additional facts exist to corroborate an informant’s tip and the probable cause determination. In United States v. DeLeon, 979 F.2d 761 (9th Cir.1992), it was ultimately omitted information in the affidavit that rendered the warrant deficient when nothing else was presented in support of the tip and witnesses contradicted the tipster’s claims. A named citizen informant reported that he had seen and smelled marijuana while two other witnesses had told him that they had seen and smelled marijuana. Id. at 764. However, when police interviewed those additional witnesses, one flatly denied seeing or smelling anything and another stated he only smelled growing marijuana. Id. Given that the “only remaining peg on which to hang the warrant” was the witness who claimed to smell the growing marijuana, that court determined that his qualification to recognize the odor of growing marijuana, or “basis of knowledge” was highly relevant. Id. at 765.
[¶ 71.] In State v. Josephson, 123 Idaho 790, 852 P.2d 1387 (1993), another case cited by the special writing, the police affidavit in support of the search warrant failed to include any basis of knowledge as to how the anonymous informant knew the plants he saw were marijuana, and did not describe the plants in any detail that would have enabled the magistrate to determine that what the caller saw was in fact marijuana or appeared to be marijuana. Id. 1390. In addition, the police failed to verify any of the information provided by the anonymous informant other than that the defendant lived at the address given by the caller. Id.
[¶ 72.] State v. Eady, 245 Conn. 464, 733 A.2d 95 (1998) (Eady I), also provides no support for the special writing’s proposition, as it was superseded on reconsideration by State v. Eady, 249 Conn. 431, 733 A.2d 112 (1999) (Eady II). In Eady II, the Connecticut Supreme Court held that a reasonable and prudent person untrained in recognizing drugs “could have believed that the green, leafy substance inside the clear plastic bag located in plain view in *427 the open cigar box in the defendant’s locked bedroom was probably marijuana.” Id. at 119. It then upheld the search under the plain view exception to the warrant requirement. Id.
[¶ 78.] The greater weight of the authority falls to those jurisdictions that do not require law enforcement to know facts concerning a citizen informant’s basis of knowledge, which include Montana, Nebraska, Virginia and Wisconsin. See State v. Griggs, 306 Mont. 366, 34 P.3d 101, 104 (2001); State v. Lammers, 267 Neb. 679, 676 N.W.2d 716, 725 (2004); Wheeler v. Commonwealth, 217 Va. 95, 225 S.E.2d 400, 403 (1976); State v. Paszek, 50 Wis.2d 619, 184 N.W.2d 836 (1971). The Montana Supreme Court has held that ‘‘[i]nformation supplied by a ‘concerned citizen’ ... whose identity is known, who personally observes the alleged criminal activity, and who openly risks liability by accusing another person of criminal activity — may not need further law enforcement corroboration[.]” Griggs, 34 P.3d at 104. Only when the tip is provided by an anonymous caller or a confidential informant has the Montana Supreme Court required corroboration of more than innocuous facts to support a probable cause determination. See id.; State v. Gray, 38 P.3d 775, 779 (Mont.2001).
[¶ 74.] Similarly, the Nebraska Supreme Court has held a citizen witness’s “detailed eyewitness report of a crime may be self-corroborating because it supplies its own indicia of reliability.” Lammers, 676 N.W.2d at 725. That court also upheld a finding of probable cause based on a bank employee’s tip as a citizen informant of seeing a plastic baggie corner containing a yellow-powdered substance on the floor of the bank in nearly the same spot where the defendant had been standing minutes before while rummaging through his pockets. State v. Marcus, 265 Neb. 910, 660 N.W.2d 837 (2003). No special knowledge was required of the bank employee concerning how drugs are packaged or their appearance. Id. That court held that the lack of an “apparent motive other than good citizenship in reporting the observations made a citizen informant’s eye witness observation of drugs presumptively reliable.” Id. at 842-843.
[¶ 75.] The Supreme Court of Virginia has recognized that “there is no requirement that a known reliable informant demonstrate the basis for his conclusion that the substance he observed was a narcotic.” Wheeler, 225 S.E.2d at 403. Similarly, the Wisconsin Supreme Court upheld a probable cause determination based on a citizen informant’s tip that she observed marijuana. Paszek, 50 Wis.2d 619, 184 N.W.2d 836. That court reasoned that although the citizen informant was not a chemist or an expert on drugs, “an expert’s opinion is not required at the probable cause stage of the criminal proceedings to establish that the substance at issue was a controlled substance such as marijuana.” Id. at 842.

Budget Host Manager as a Citizen Informant

[¶ 76.] “[I]f an unquestionably honest citizen comes forward with a report of criminal activity — which if fabricated would subject him to criminal liability — we have found rigorous scrutiny of the basis of his - knowledge unnecessary.” Gates, 462 U.S. at 233-34, 103 S.Ct. at 2330, 76 L.Ed.2d 527 (citing Adams, 407 U.S. at 146-147, 92 S.Ct. at 1923-24, 32 L.Ed.2d 612). That is because tips from citizen informants “are more likely to be reliable than information from informants; ‘the ordinary citizen who has never before reported a crime to the police may, in fact, be more reliable than one who supplies information on [a] regular basis.’” State v. Lownes, 499 N.W.2d 896, 899 (S.D.1993) (quoting United States v. Harris, 403 U.S. *428 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971)) (citing State v. McCloskey, 453 N.W.2d 700, 703-04 (Minn.1990); Marben v. State, Dept. of Public Safety, 294 N.W.2d 697, 699 (Minn.1980)). A tip based on an “explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the informant’s] tip to greater weight than might otherwise be the case.” Gates, 462 U.S. at 234, 103 S.Ct. at 2330, 76 L.Ed.2d 527.
[¶ 77.] The Court appears to categorize the Budget Host manager as an anonymous informant, and evaluates his “reliability, veracity, and basis of knowledge” using cases involving anonymous tipsters. See supra ¶¶ 19-21. The Budget Host manager is more properly classified as a citizen informant as he gave his title and place of work, which was then relayed to Hamann by dispatch. See Lammers, 676 N.W.2d at 725 (noting “that identification of the informant’s occupation alone is sufficient to negate a claim that the informant was anonymous.”) (citing United States v. Pasquarille, 20 F.3d 682 (6th Cir.1994); City of Maumee v. Weisner, 87 Ohio St.3d 295, 720 N.E.2d 507, 514 (1999)). Therefore, the Budget Host manager more properly qualifies as a voluntary and identified citizen informant rather than an anonymous informant. As a citizen informant, it is not necessary to rigorously examine the basis of his knowledge.
[¶ 78.] It is true that the Budget Host manager detected the presence of marijuana via his olfactory sense rather than through visual observation. However, some courts have “long recognized that marijuana has a distinct smell and that the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage.” United States v. Morin, 949 F.2d 297, 300 (10th Cir.1991) (citing United States v. Merryman, 630 F.2d 780, 785 (10th Cir.1980); United States v. Sperow, 551 F.2d 808, 811 (10th Cir.1977), cert. denied, 431 U.S. 930, 97 S.Ct. 2634, 53 L.Ed.2d 245 (1977); United States v. Bowman, 487 F.2d 1229, 1231 (10th Cir.1973)). These cases have typically pertained to law enforcement officers detecting the odor of marijuana. However, not all jurisdictions require that an officer provide the basis of his knowledge of the odor of marijuana in order to establish probable cause. See United States v. Turner, 431 F.3d 332, 337 (8th Cir.2005) (upholding district court’s finding of probable cause based on law enforcement officers’ statements that defendant smelled strongly of marijuana when they encountered him in a public bar); United States v. Carr, 92 F.Supp.2d 1137, 1141-42 (D.Kan.2000) (upholding law enforcement officer’s affidavit asserting he smelled marijuana despite the failure to provide a basis for his ability to recognize the odor of marijuana) (citing United States v. Ludwig, 508 F.2d 140, 141 (10th Cir.1974)) (holding inherent in officer’s statement that he smelled marijuana is the claim that he is familiar with substance’s odor).
[¶ 79.] The facts of this case meet the threshold requirement of “reasonably trustworthy information.” The hotel manager called Lawrence County dispatch and identified himself by title. He gave a detailed account of what he had perceived via his sense of smell: “The hallway smells of marijuana, as well as the two rooms that they were staying in. (Room 23 and Room 24).” He then provided information that four male guests had just left the Budget Host Hotel, provided a description of the vehicle, its license plate number and state of issue, and the general direction of the vehicle’s travel. Hamann corroborated the physical description of the vehicle, the license plate number and the direction of travel, and occupancy by four males when *429 he spotted Sweedland’s car; he then initiated the stop.
[¶ 80.] What is at issue then, is whether the citizen informant tip plus the corroboration of the non-criminal conduct and appearance of Sweedland and his passengers rose to the level of probable cause, sufficient “to warrant a man of reasonable caution in the belief that” these were the individuals who had been smoking marijuana at the hotel in violation of SDCL 22-42-15.[17] If yes, then Hamann had probable cause to stop the vehicle and conduct the search from the very beginning of the encounter. If the facts rose only to the level of reasonable suspicion for a Terry investigative stop, the question then becomes did anything occur during the stop that provided the additional facts necessary for reasonable suspicion to ripen into probable cause.

Probable Cause to Search the Vehicle

[¶ 81.] The Court concedes that it was reasonable for Hamann to conclude that one who had been using marijuana shortly before a stop might also possess marijuana. Supra ¶ 25. Despite this concession, the Court goes on to state that “Hamann could not infer possession without first corroborating the allegation of marijuana use.” However, Hamann was not required to infer possession before conducting the search. Hamann had all that he needed when he inferred that the crime of ingestion of a controlled substance had occurred based on the motel manager’s tip and his corroboration of the license plate number, direction of travel, and gender of the four occupants. See supra ¶ 24. His original belief that evidence of the crime of ingestion of a controlled substance would be found in the vehicle was sufficient for a determination of probable cause and justified the search for evidence of a violation of SDCL 22-42-15. The fact that the search produced evidence of other crimes different[18] from the original crime for which probable cause was originally established, ingestion of a controlled substance under SDCL 22-42-15, cannot invalidate the search. See Peterson, 407 N.W.2d at 224.
[¶ 82.] In Peterson, an officer stopped a vehicle due to erratic driving and detected the smell of alcohol coming from the vehicle and emanating from the driver. Id. at 222. We held that the smell of alcohol on the driver justified a warrant-less search of an automobile for further evidence of crime. Id. at 223. The search in that case was for an open container, a violation of SDCL 35-1-1.9, a Class 2 Misdemeanor. The officer found one open beer can that appeared at first glance to be empty, and then proceeded to search the entire car and its contents for additional open containers. Id. The driver in Peterson was able to pass the field sobriety tests, but the odor of alcohol provided sufficient probable cause for a search of the vehicle for open containers. Id. During the final phase of the search for open containers, law enforcement found drug paraphernalia and some marijuana. Id. at *430 224. We upheld the search under the “automobile exception” despite the fact that the original search was based on probable cause to believe that the driver had an open container of alcohol in the car. Id.
[¶ 83.] In the instant case, the tip from the motel manager provided “reasonably trustworthy” information that the offense of ingestion of a controlled substance under SDCL 22-42-15, a Class 1 misdemean- or, had occurred. Based on the tip and the corroborating information confirmed by Hamann, it was reasonable for law enforcement to conclude that a search of the vehicle would generate evidence that the occupants had violated SDCL 22-42-15. The occupants were traveling from Deadwood back to their homes in Montana with their possessions, including their luggage and car. It was reasonable for law enforcement to believe that evidence of the crime of ingestion of a controlled substance would be inside the car or their luggage, either in the form of drug paraphernalia or evidence of residue of marijuana, as Sweedland and his companions had just departed the motel.

Pipes and Screens as Facts Supporting Probable Cause Determination

• [¶ 84.] Finally, even if we were to assume that the Budget Host manager’s tip along with the innocuous facts corroborated by Hamann were deficient for a finding of probable cause to search the vehicle under the automobile exception, the Court still fails to consider the last corroborating fact known to Hamann immediately prior to the search of the ear. After asking the passengers for their consent to conduct a pat search, but before Teasdale was physically touched by the officer and before there was any indication from Hamann that the stop had concluded and the four men were free to go, Teasdale produced from his coat pocket screens and two unused one-hit pipes.
[¶ 85.] Hamann admitted at the suppression hearing that the pipes could be used to smoke tobacco as well as marijuana. But that concession did not negate Hamann’s common sense determination at the time of the stop that the report of the smell of marijuana from a reliable citizen informant coupled with the presence of unused drug paraphernalia “was sufficient for a common sense decision that there was a fair probability ” that marijuana had been ingested by the occupants of Sweed-land’s car, that the pipes were recently purchased in order to ingest additional quantities of marijuana, and that the additional quantities of marijuana the occupants planned on ingesting were already in the car.[19]
[¶ 86.] Based on the facts of this case, the authorities cited, and the common sense inferences made by Hamann, I would uphold the circuit court’s conclusion that probable cause to search Sweedland’s vehicle existed at the time of the stop.

. The text is a transcript of the radio dispatch, which was entered into evidence at the suppression hearing.

. SDCL 32-12-67 provides: “It is a Class 1 misdemeanor for any person to display or cause or permit to be displayed or have in that person’s possession any canceled, revoked, suspended, fictitious, or fraudulently altered driver license.” A Class 1 misdemeanor is punishable by up to “one year imprisonment in a county jail or one thousand dollars fine, or both[.]” SDCL 22-6-2(1) (effective through July 1, 2006).

. United States v. Patterson, 292 F.3d 615, 626 (9th Cir.2002), opinion withdrawn by, United States v. Patterson, 359 F.3d 1190 (9th Cir.2004), (no holding requiring the basis of knowledge of an informant be known to a magistrate at the time of the warrant application, but basis of knowledge detailed and noted by the court); People v. Schulle, 51 Cal.App.3d 809, 124 Cal.Rptr. 585 (1975) (holding 14-year old girl was citizen informant and presumptively reliable due to lack of motivation other than good citizenship, while also noting the basis of her knowledge as to the appearance of marijuana based on her numerous visual observations of it while at her parents’ home); People v. Paris, 48 Cal.App.3d 766, 122 Cal.Rptr. 272 (1975) (informant was a citizen informant and presumptively reliable as a consequence of his motivation to report crime, and his experience as a reserve police officer trained to recognize the illegal substance noted but not relied upon for finding probable cause); State v. Morris, 444 So.2d 1200 (La.1984) (prior usage of marijuana was material to determining informant's status as a citizen informant and therefore presumptively credible, rather than mere usage of marijuana in the past altering his status to that of a confidential or criminal informant who might have a reason to lie due to potential criminal penalties); State v. Swift, 251 Neb. 204, 556 N.W.2d 243 (1996) (holding that the unnamed apartment manager's tip as a citizen informant concerning the presence of marijuana was corroborated by a social worker whose basis of knowledge as to the appearance of marijuana was detailed. However, no holding was made by the court that the unnamed apartment manager’s tip without information as to the basis of his knowledge was insufficient to support determination of probable cause); Patty v. Commonwealth, 218 Va. 150, 235 S.E.2d 437, 439 (1977) (recognizing that "[w]hile there is no requirement that a known reliable informant demonstrate the basis for his conclusion that the substance he observed was a narcotic, Wheeler v. Commonwealth, 217 Va. 95, 98, 225 S.E.2d 400, 403 (1976), the informants here spoke from experience and not from mere supposition”); State v. Doyle, 96 Wis.2d 272, 291 N.W.2d 545, 553-554 (1980) (court held the second prong of the Aguilar-Spinelli test, that the underlying circumstances or manner in which the informant obtained his information is reliable, was satisfied by the information two citizen informants provided to the police, which was based on their personal observations and one of the citizen informant’s knowledge of marijuana gained while serving in Vietnam, but not specifically requiring the basis of knowledge be disclosed).

. SDCL 22-42-15 provides in relevant part:
Any person who intentionally ingests, inhales, or otherwise takes into the body any substance, except alcoholic beverages as defined in § 35-1-1, for purposes of becoming intoxicated, unless such substance is prescribed by a practitioner of the medical arts lawfully practicing within the scope of the practitioner’s practice, is guilty of a Class 1 misdemeanor.

. Sweedland was eventually charged, tried and convicted of Possession of Marijuana (more than ten pounds) under SDCL 22-42-6, Possession of Marijuana with Intent to Distribute under SDCL 22-42-7, and Possession of Drug Paraphernalia under SDCL 22-42A-3.

. The circuit court held that the State failed to show by a preponderance of the evidence that the three passengers knowingly and voluntarily consented to the pat search when asked by Hamann. However, the circuit court also correctly concluded that Sweed-land could not assert a legitimate privacy interest in Teasdale’s pat down search sufficient to support a motion for suppression. Therefore, we need not specifically consider whether Teasdale's consent was voluntary. The voluntariness of the pat search is even less significant in light of the fact that Teasdale produced the items before he was pat searched by Hamann.