IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 17, 2015 Session

**STATE OF TENNESSEE v. DWIGHT DAVID FOSTER**

**Appeal from the Criminal Court for Hamblen County**
**No. 14CR177     Alex E. Pearson, Judge**

_____

**No. E2015-00409-CCA-R3-CD – Filed February 11, 2016**

_____

Appellant, Dwight David Foster, pleaded guilty to possession of less than point five (.5) grams of methamphetamine with intent to sell or deliver, a Class C felony; simple possession of marijuana, a Class A misdemeanor; simple possession of buprenorphrine, a Schedule III controlled substance, a Class A misdemeanor; and possession of drug paraphernalia, a Class A misdemeanor. He received the agreed-upon effective sentence of five years as a Range I, standard offender to be served in the Tennessee Department of Correction. Pursuant to the plea agreement, he certified a question for our review. Upon the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROBERT H. MONTGOMERY, JR., JJ., joined.

Paul G.S. Whetstone, Morristown, Tennessee, for the Appellant, Dwight David Foster.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Dan. E. Armstrong, District Attorney General; and Connie Trobaugh, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This case arose from the stop of appellant's vehicle and his subsequent arrest on drug-related charges. A law enforcement officer stopped the vehicle based on information relayed to the officer by a dispatcher by way of a 9-1-1 call from a citizen informant. Prior to entering his guilty pleas, appellant filed a motion to suppress the evidence against him, which was denied by the trial court.

## I. Facts

At the suppression hearing, the State's first witness was Eric Carpenter, the director of the Morristown-Hamblen County Emergency 9-1-1 Center. Through him, a recording of the 9-1-1 call that was placed by Roger Harvey was introduced into evidence. In the call, Mr. Harvey gave his name and address, identified himself as a neighbor of the residence where alleged illegal drug activity was occurring, and provided the license plate number of appellant's vehicle. On cross-examination, Mr. Carpenter recalled that the dispatcher, Pam Stern, terminated the call with Mr. Harvey prior to contacting Sergeant Jimmy Standifer on the radio. On redirect examination, Mr. Carpenter clarified that Mr. Harvey called back to report that appellant had left the area and that Ms. Stern relayed that information to Sergeant Standifer; however, that telephone call was not recorded.

Sergeant Standifer, a deputy with the Hamblen County Sheriff's Department, testified that on May 18, 2013, he was contacted by Pam Stern at dispatch and advised of possible narcotics activity. Ms. Stern gave him the location and asked if he could investigate, and Sergeant Standifer said that he would. The location that Ms. Stern provided was Coffey Road, which Sergeant Standifer described as a low-traffic area with few residences and "one way in and one way out." As Sergeant Standifer was arriving, Ms. Stern provided further information from appellant's neighbor, Mr. Harvey, who said that "there was a lot of drug activity going on there" and that the subject was driving a "red truck with big tires." Sergeant Standifer then observed a truck matching that description leaving the area. He turned around and followed the truck.

Sergeant Standifer testified, "I followed it down the road[,] and I just thought I'd stop him, check him, make sure everything was okay." When he stopped appellant's truck, Sergeant Standifer asked him if he had a license, registration, and proof of insurance. Sergeant Standifer ran appellant's license through dispatch and learned that it was suspended. When he advised appellant of this, appellant denied having any knowledge that his license was suspended. Sergeant Standifer said that he then requested that appellant exit the vehicle and accompany him to his patrol car while they waited for another officer to arrive.

When the other officer arrived, Sergeant Standifer asked appellant for consent to search his vehicle, and appellant consented. Sergeant Standifer said that the first thing he observed through the driver's side door was a zippered Black & Decker bag. At that point, he recalled a comment being made by Ms. Stern about a "little black box." When he removed the bag from under the driver's seat and unzipped it, he discovered several baggies of methamphetamine, several grams of marijuana, drug paraphernalia, suboxone strips, and cash.

On cross-examination, Sergeant Standifer said that if he could hear Mr. Harvey's voice at all in the background during his call with the dispatcher, it was so faint that he could not discern whether the voice was male or female. He clarified that the black box was the size of one that would hold a set of drill bits.

Sergeant Standifer recalled that at some point, he ran the license plate of the red truck appellant was driving and learned that it was registered to Robin Tolliver. He said that information alone would not have provided him a reason to stop the truck. Further, Sergeant Standifer observed that appellant committed no traffic violations while driving; the only reason he stopped the truck was the information provided to Ms. Stern by Mr. Harvey. Sergeant Standifer acknowledged that when Mr. Harvey reported the license plate number of the truck, Mr. Harvey misread it twice.

Sergeant Standifer stated that he was in uniform and armed when he requested consent to search appellant's vehicle. A second officer had just arrived on the scene. Appellant appeared "nervous and jittery." He gave consent to search the truck but did not sign a form.

Based upon the testimony, the trial court found that the circumstances justified a brief investigatory stop of the truck being driven by appellant. The trial court concluded that this was not a case involving an unknown informant because Mr. Harvey gave his name, and thus, the case involved a known citizen informant. The court noted that Mr. Harvey described the truck, provided the correct license plate number (after two incorrect attempts), described the black pouch, and said that it was one of his neighbor's drug dealers. The court further opined that while this information was insufficient to establish probable cause, it nonetheless formed the basis for a brief detention, during which Sergeant Standifer learned that appellant's license had been suspended. The trial court found that appellant's consent to search the truck was given knowingly and voluntarily.

Appellant subsequently entered guilty pleas and received the following sentences: possession of less than point five (.5) grams of methamphetamine with intent to sell or deliver, a Class C felony (a lesser-included offense of the indicted offense of possession of approximately twenty grams of methamphetamine, a Class B felony), five years; simple possession of marijuana, a Class A misdemeanor, eleven months, twenty-nine days; simple possession of buprenorphrine, a Schedule III controlled substance, a Class A misdemeanor, eleven months, twenty-nine days; and possession of drug paraphernalia, a Class A misdemeanor, eleven months, twenty-nine days. The trial court sentenced appellant as a Range I, standard offender and ordered concurrent alignment of his sentences, for an effective sentence of five years to be served in the Tennessee Department of Correction. Pursuant to the plea agreement, he certified the following question for our review: "Whether, on May 18, 2013, in Hamblen County, Tennessee, Sergeant Jimmy Standifer initiated a lawful stop of the defendant as he was travelling on

Sulphur Springs Road, based upon facts creating a sufficient reasonable suspicion of ongoing criminal activity, which [Officer] Standifer previously received exclusively from a 9-1-1 operator."

## II.  Analysis

Rule 3(b)(2) of the Tennessee Rules of Appellate Procedure permits a defendant to plead guilty while reserving the right to appeal a certified question of law that is dispositive of the case.  In doing so, a defendant must also comply with the requirements of Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure.  Rule 37 outlines the following requirements:

(i)   the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;

(ii)   the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;

(iii)   the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

(iv)   the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case.

Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv).  The State acknowledges that this certified question is properly before the court, and our review of the record confirms the same.

Prior to entering his guilty pleas, appellant filed a motion to suppress the evidence against him, which was denied by the trial court.  In reviewing the trial court's decision on a motion to suppress, we review the trial court's legal conclusions de novo.  *State v. Northern*, 262 S.W.3d 741, 747 (Tenn. 2008).  In doing so, we give deference to the trial judge's findings of fact unless the evidence preponderates otherwise.  *Id.*; *see State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). "'[C]redibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.'" *Northern*, 262 S.W.3d at 747-48 (quoting *Odom*, 928 S.W.2d at 23).  In reviewing the findings of fact, evidence presented at trial may "'be considered by an appellate court in

deciding the propriety of the trial court's ruling on the motion to suppress.'" *State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003) (quoting *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001)). The prevailing party on the motion to suppress is afforded the "'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *Northern*, 262 S.W.3d at 748 (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)); *see State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000); *Odom*, 928 S.W.2d at 23.

Both the federal and Tennessee constitutions provide protections from unreasonable searches and seizures. *State v. Moats*, 403 S.W.3d 170, 177 (Tenn. 2013). Generally, a warrantless search or seizure is presumed unreasonable and any evidence obtained therefrom is subject to suppression. *Id*; *see* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . . "); Tenn. Const. art. I, § 7 ("[T]he people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures . . . ."). "'[T]he most basic constitutional rule . . . is that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Id.* (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)).

Our supreme court has recognized three categories of police interactions with private citizens: (1) a full-scale arrest, which requires probable cause; (2) a brief investigatory detention, which requires reasonable suspicion of wrongdoing; and (3) a brief police-citizen encounter, which requires no objective justification. Only the first two types of encounters "rise to the level of a 'seizure' for constitutional analysis purposes." *Id.* at 178 (quoting *State v. Day*, 263 S.W.3d 891, 901 (Tenn. 2008)). "A full-scale arrest supported by probable cause does not, of course, require a warrant." *Id.* However, in this case, the State does not assert that Officer Standifer had probable cause to effectuate a warrantless arrest but rather that he had reasonable suspicion of wrongdoing sufficient to justify a brief investigatory traffic stop. *Id.*

Because traffic stops constitute seizures, a vehicle's occupants are entitled to the full protections of the United States and Tennessee Constitutions. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *State v. Brotherton*, 323 S.W.3d 866, 870 (Tenn. 2010); *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993). Thus, law enforcement must act reasonably when initiating a traffic stop. *Whren*, 517 U.S. at 809-10. In other words, authorities must have at least an "articulable and reasonable suspicion" to believe that a criminal offense has occurred when they initiate a traffic stop. *Brotherton*, 323 S.W.3d at 870 (quoting *Whren*, 517 U.S. at 810). Our supreme court has explained that reasonable suspicion is "a particularized and objective basis for suspecting the subject of a stop of criminal activity." *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). "Reasonable

-5-

suspicion exists when 'specific and articulable facts . . . taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "An investigatory traffic stop under *Terry* 'is a far more minimal intrusion [than an arrest pursuant to probable cause], simply allowing the officer to briefly investigate further. If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way.'" *Id.* (quoting *Illinois v. Wardlow*, 528 U.S. 119, 126 (2000)). When, as in this case, an officer initiates an investigatory stop of a vehicle based not on the manner of driving but on information relayed from a dispatcher, the stop will be upheld "as long as the individual or agency placing the dispatch has the requisite reasonable suspicion supported by specific and articulable facts that indicate criminal conduct." *State v. Moore*, 775 S.W.2d 372, 378 (Tenn. Crim. App. 1989).

Our supreme court has recently summarized the present state of the law regarding brief investigatory stops:

> When an officer has reasonable suspicion, supported by specific and articulable facts, to believe that a criminal offense has been or is about to be committed, a brief investigatory detention is permitted. Reasonable suspicion must be supported by more than the officer's inchoate and unparticularized suspicion or 'hunch[ ]'; however, reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause . . . [and] can arise from information that is less reliable than that required to show probable cause.

> Trial courts must examine the totality of the circumstances when evaluating whether an officer has established the requisite level of suspicion to justify a [brief investigatory] stop. These circumstances include an officer's observations, information from other law enforcement personnel or agencies, information from citizens, known patterns of criminal offenders, or deductions based upon experience. When evaluating the reasonableness of the police officer's suspicion, the nature of the crime suspected may be a factor.

*Moats*, 403 S.W.3d at 178-79 (citations and internal quotation marks omitted).

The information provided to Officer Standifer was relayed from a private citizen through the dispatcher.

> Information provided by a citizen/bystander witness known to the [police] is presumed to be reliable, and the prosecution is not required to establish either the credibility of the informant or the reliability of his information.

The rationale for applying the presumption of reliability in these circumstances is two-fold. First, [c]itizen informants, whether they be victims or witnesses, have necessarily gained their information through first-hand experience. Second, [t]he criminal informant provides information in exchange for some consideration—whether it be monetary or the granting of some exemption or privilege—*while the citizen informant acts in the interest of society or personal safety*. Thus, although Tennessee decisions have recognized the interests that typically motivate citizen informants and justify the presumption of reliability, no Tennessee decision has conditioned application of the presumption of reliability upon a showing that the citizen informant was in fact motivated by one or both of these interests. The presumption of reliability applies if the prosecution establishes simply that the information was provided by a known citizen informant.

*State v. Dotson*, 450 S.W.3d 1, 51-52 (Tenn. 2014) (footnotes, citations, and internal quotation marks omitted). Our supreme court has "long held that information provided by a citizen-informant carries a presumption of reliability." *State v. Bishop*, 431 S.W.3d 22, 38 (Tenn. 2014). In other words, if the informant "is a person (1) who is known to the police, (2) who is not part of the 'criminal milieu,' and (3) whose motivation is to aid the police without any expectation of remuneration, then the information is deemed reliable and is sufficient to provide probable cause for arrest." *Id.* (citing *State v. Melson*, 638 S.W.2d 342, 354-56 (Tenn. 1982)).

Only when "'the arresting officers rely in part on information from an informant from the criminal milieu' . . . must [they] be able to demonstrate that the informant (1) has a basis of knowledge and (2) is credible or his information is reliable." *State v. Echols*, 382 S.W.3d 266, 279 (Tenn. 2012) (quoting *State v. Lewis*, 36 S.W.3d 88, 98 (Tenn. Crim. App. 2000)); *see also State v. Jacumin*, 778 S.W.2d 430, 436 (Tenn. 1989) (approving the two-prong test in *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969), for evaluating information provided to law enforcement by informants that is subsequently relied upon in a search warrant affidavit)). The standard for reliability of a confidential informant's information is the same whether the information is used as a basis for a search warrant or for an investigatory stop. *See State v. Dennis W. Menzies*, No. W1998-00608-CCA-R3-CD, 2000 WL 424277 at *5-7 (Tenn. Crim. App. Apr. 20, 2000).

However, the name of the citizen alone is insufficient to establish the informant as a known citizen informant, thereby attributing him with the presumption of reliability. *State v. Luke*, 995 S.W.2d 630, 637 (Tenn. 1998); *see also State v. Smith*, 867 S.W.2d 343, 348 (Tenn. Crim. App. 1993) (holding that the informant's name alone without indicating who he was or how he came by the information did not give rise to probable

cause for a search warrant). For the presumption of reliability to attach, information must be presented about the citizen's status or his or her relationship to the events or persons involved. *Id*; *see Melson*, 638 S.W.2d at 354-56 (presuming reliability of citizens when the search warrant affidavit listed the names of the informants, their relationship to the victim, and their status as witnesses to events). *But see State v. Joe Ed York*, No. 03C01-9609-CC-00345, 1997 WL 314781, at *5 (Tenn. Crim. App. June 12, 1997) (concluding that an informant known only as a concerned citizen must be assessed under the *Jacumin* standard).

Appellant argues that the reliability of the information provided by Mr. Harvey must be reviewed under the *Aguilar-Spinelli* standard as set forth in *Jacumin.* We disagree. In this case, the citizen informant, Roger Harvey, provided the dispatcher with his name and address, and he identified himself as a neighbor of the residence where alleged drug activity was occurring. He also provided the name of his neighbor whom he believed to be engaged in drug activity. He described the vehicle driven by the man he presumed to be a drug dealer and read the license plate number to the dispatcher. He stated that the man was walking up to the residence carrying his "drug pouch," which Mr. Harvey described as a small Black & Decker bag. Based upon the detailed information that Mr. Harvey relayed to the dispatcher, we agree with the trial court's conclusion that Mr. Harvey was a citizen informant and was thereby entitled to a presumption of reliability.

Officer Standifer testified that the only basis for his stopping the vehicle driven by appellant was the information received through dispatch from Mr. Harvey. Having determined that relying upon Mr. Harvey as a citizen informant did not violate appellant's constitutional rights, we must look further at the sufficiency of the information provided. In *State v. Marcus Richards*, No. M2006-02179-CCA-R3-CD, 2008 WL 343150, at *1 (Tenn. Crim. App. Feb. 6, 2008), a citizen informant who was deemed to be reliable by the court contacted an officer with information that he had witnessed a drug transaction at a picnic table behind a Franklin residence. *Id.* He provided the name of one of the participants and a description of a vehicle driven by another participant. *Id.* During the ensuing encounter, officers observed appellant Richards, who was neither the named participant nor the driver of the described vehicle, and performed an initial search of his person. *Id.* at *2. Although this court ruled that a second search of appellant Richards was not supported by probable cause, the court concluded that the seizure and initial search was justified based on the information provided by the informant. *Id.* at *4-6.

The information provided by the citizen informant in *Marcus Richards* is substantially similar to that provided by Mr. Harvey in this case. Mr. Harvey stated that one of his neighbor's "drug dealers" arrived at her house with his "drug pouch" in his hand. Mr. Harvey described the truck, together with the license plate number, that was

driven by appellant and provided the dispatcher with information as to his departure time from the residence. This information is sufficient to satisfy a "reasonable suspicion" of criminal activity, which justified Officer Standifer's seizure and brief investigatory stop of appellant. We conclude that the information provided by Mr. Harvey was sufficient to meet the threshold of "specific and articulable facts" necessary to establish reasonable suspicion to stop appellant's vehicle.

We further disagree with appellant's argument that Mr. Harvey's information must be discounted because he did not witness an event that constituted criminal activity. To pass constitutional muster, information providing the basis for reasonable suspicion need not rise to the level of probable cause. *See Moats*, 403 S.W.3d at 178. The trial court correctly noted that the information from Mr. Harvey would not have supported probable cause for an arrest but was sufficient to establish reasonable suspicion for Officer Standifer to briefly detain appellant. Moreover, we reject appellant's contention that the trial court erred because Officer Standifer relied "exclusively" upon Mr. Harvey's information as relayed through dispatch, which constituted "less reliable" hearsay. While the rules of evidence govern a hearing on a motion to suppress, one notable exception exists: "hearsay evidence is generally admissible on the issue of probable cause to search or to [a]ffect an arrest." Raybin, David Louis, 9 Tenn. Prac. Crim. Prac. & Procedure § 18:12 (citing *State v. Hill*, 638 S.W.2d 827 (Tenn. Crim. App. 1982)). While this case involves "reasonable suspicion" rather than "probable cause," we deem this point of law to be instructive as they both turn on Fourth Amendment considerations and the interplay between law enforcement officers and citizens. Appellant is not entitled to relief.

## CONCLUSION

Based upon our review of the record as a whole, the briefs of the parties, the arguments of counsel, and the applicable legal authority, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE